469 A.2d 1008

**Robert E. O'BRIEN, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, STATE EMPLOYES' RETIREMENT SYSTEM, Appellee.**

Supreme Court of Pennsylvania.

Argued May 23, 1983.

Decided Dec. 14, 1983.

Reconsideration Denied Feb. 3, 1984.

Thomas E. Sterling, State College, for appellant.

Marsha V. Mills, Harrisburg, for appellee.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Appellant filed a notice of appeal from Commonwealth Court's October 18, 1982 order dismissing what he characterizes as a petition addressed to that court's original jurisdiction. In Commonwealth Court he sought an order requiring our Retirement Board to grant him a further hearing on the method of computing his state pension, a matter already twice determined on appellate review of final agency orders. Commonwealth Court, assuming it had original jurisdiction, nevertheless dismissed appellant's action as barred by *res judicata.*[1]

In this Court appellee renews its challenge to the Commonwealth Court's original jurisdiction under Section 761 of our Judicial Code. 42 Pa.C.S. § 761. If, indeed, Commonwealth Court's jurisdiction over this case is appellate, *see* 42 Pa.C.S. § 763,[2] and not original, then appellant has no right of direct appeal to this Court under 42 Pa.C.S. § 723(a), but must seek discretionary review on a petition for allocatur. *See* 42 Pa.C.S. § 724. For the reasons that follow we agree with appellee that this action does not fall within Commonwealth Court's original jurisdiction and hold appellant has no right of direct appeal. Moreover, treating appellant's

1. The Commonwealth Court declined to address the jurisdictional question. It assumed, for the sake of argument, that it had original jurisdiction.

2. The term original as used herein refers to cases originally commenced in Commonwealth Court, as required by Section 723(a) governing direct appeals to us, and to those cases falling within Commonwealth Court's "original jurisdiction" under Section 761, as that jurisdiction is limited by the assignment of other types of cases to its appellate jurisdiction. *See Commonwealth, Department of Aging v. Lindberg,* 503 Pa. 423, 469 A.2d 1012.

notice of appeal as a petition for allocatur, we grant it and affirm.[3]

Appellant retired from state service on June 30, 1967, entitled to a state pension. In applying for that pension he asked our Retirement Board to allow him to buy back his United States military service from February 17, 1941, when he was inducted from state service with our Welfare Department under the President's Executive Order, until his discharge on September 30, 1954. In December, 1969, appellant received notice from the then Secretary of the Retirement Board of an adjudication allowing him only five years of military buy back, from February 17, 1941 to February, 1946. From the opinion of the Dauphin County Court of Common Pleas, reported *sub nom State Employees Retirement Board v. O'Brien*, 93 Dauphin 101 (1970), at its No. 825 Commonwealth Docket, 1969, it appears appellant was eligible for release from the United States Armed Forces in February, 1946, but chose to remain on active duty until September 30, 1954.[4] Based on that fact, Dauphin County Common Pleas held petitioner was not entitled to buy back any military time beyond February, 1946, the date on which it determined he was eligible for release from federal military service. As a matter of statutory interpretation Common Pleas held the legislature intended to allow buy back for federal military service between September 16, 1940 and July 27, 1953 only for the included time interval between induction from state employment under executive order and eligibility for release. Thus it held actual discharge did not control where a former state employee chose to remain in the federal armed forces

3. We have reached this result in three other cases decided this day. *XPress Truck Lines, Inc. v. Pennsylvania Liquor Control Board*, 503 Pa. 399, 469 A.2d 1000, *Gossman v. Lower Chanceford Township Board of Supervisors*, 503 Pa. 392, 469 A.2d 996, and *Pennsylvania Department of Aging v. Lindberg, supra.*

4. According to Dauphin County Common Pleas there was no evidence in the record that he applied for discharge in February of 1946. Common Pleas stated that appellant had admitted he could have "phased out" military service in 1946 but elected to remain as an officer. Indeed, on October 18, 1947 appellant applied for and received a refund of his contributions to the State Retirement Fund.

after he was eligible for release. This decision affirmed the administrative adjudication limiting the statutory buy back to the period from compulsory induction to eligibility for discharge. The order so limiting the buy back became final when we denied appellant's request for allocatur on December 4, 1970 and the time for appeal or petition for certiorari to the United States Supreme Court expired. The section of the State Employees Retirement Code of 1959 specifically applicable to appellant's claim was Section 207(1) of the Act of June 1, 1959, P.L. 392, *as amended,* 71 P.S. § 1725–207(1)[5] which provided:

(1) A State employe who during the period from September 16, 1940, to July 27, 1953, entered into active military service, defined as full time service in the armed forces of the United States, under a requisition from or by executive order of the President of the United States, or in the armed forces organized for the defense of the Commonwealth by the authority of this Commonwealth, shall be allowed credit for the period during which he was in active military service and salary deductions were paid into the fund either during such active military service or thereafter in accordance with the provisions of article III, sections 301 and 302.[6]

**5.** The legislature repealed the State Employes' Retirement Code of 1959, *as amended,* and replaced it with a consolidated statute, the State Employes' Retirement Code, Act of March 1, 1974, P.L. 125.

**6.** Dauphin County Common Pleas determined that the legislature did not intend to permit an employee to obtain credit under Section 207(1) for periods of voluntary military service following a period of compulsory service. This would seem to be a correct construction in view of the language in Section 301(3)(a) so limiting "current contributions" while a state employee is on military service. Dauphin County Common Pleas also mentioned a five year limit on credit for time served in the armed services in an apparent reference to Section 207(5) of the State Employes' Retirement Code. Coincidentally, Colonel O'Brien's term of compulsory service happens to also be the maximum period of military service any state employee who served in the military after September 16, 1940 can buy back under Section 207(5) of our State Employes' Retirement Code. However, prior to the effective date of the Act of December 16, 1968, P.L. 1216, Section 207(5) applied only to state employees who were not in state employment before their military service. Thus, this section had no applica-

Despite the September 8, 1970 final order of Dauphin County Court of Common Pleas affirming appellant's buy back limitation to the five year period of his compulsory military service, he remained dissatisfied. Repeated requests to appear again before the Retirement Board were denied, culminating in the Board's formal dismissal of what he called a petition for "Determination of Manner of Payment of Salary Deductions," at the Board's January 30, 1973 meeting. Appellant sought appellate review of this dismissal in the Commonwealth Court. Commonwealth Court affirmed the Board's refusal to allow him to appear before it, holding that his claim was barred by *res judicata* and his request for an administrative hearing on the method of computation was unnecessary. *O'Brien v. State Employes' Retirement Board,* 12 Pa. Commonwealth Ct. 49, 315 A.2d 899 (1974). In denying appellant's request for an administrative hearing, the court held determination of the amount of appellant's pension, following Dauphin County Court of Common Pleas' September 8, 1970 decision, was a mere matter of mathematical computation, not adjudicatory in nature, and therefore not of the type for which a hearing is required.

Appellant attempted to breathe life into the same cause of action again when in February of 1981 he sought to appear before the Board to reargue the service record used to calculate his retirement and assert a claim for additional credit for military service. The Board permitted appellant

tion to petitioner who retired from state service June 30, 1967. His military buy back was necessarily determined under Section 207(1) which then applied to persons inducted into the military while employed by the state. Indeed, as appellant notes, a buy back under Section 207(5) would have required him to contribute twice the amount that would have been deducted from his pay for state retirement while he was in the military, not simply the equivalent amount he finally paid for the five year buy back he was allowed under Section 207(1). In any event, the Board's decision to limit the Colonel's "buy back" to five years is *res judicata.* Commonwealth Court's reference to Section 207(5) in its most recent opinion and order from which this appeal was taken is simply *obiter dicta* and apparently results from the understandable failure of a busy court to fully trace the legislative history of Section 207(5) to determine its text when appellant retired.

to appear before it but denied his request for an administrative hearing. He then filed the instant Petition for Review in Commonwealth Court seeking a hearing before the Board ostensibly to determine under which section of the applicable law, 207(1) or 207(5), the retirement deductions covering his military service buy back should have been calculated.[7] The Commonwealth filed preliminary objections asserting *res judicata* and lack of original jurisdiction in Commonwealth Court. Once again Commonwealth Court determined that the thrust of the petition was to relitigate the intent of the statute which was litigated previously. Consequently, Commonwealth Court sustained the Board's preliminary objections. It decided the matter based on appellant's petition, appellee's preliminary objections, and its own judicial notice of previous proceedings in the matter. It did not hold a hearing or require additional testimony.

■ We believe the recitation of these facts will help demonstrate the practical reasons of economy of judicial resources which underlie our holding that an action to compel an administrative agency which has finally denied a request for hearing to hold one is, as a matter of statutory interpretation, addressed to the appellate jurisdiction of Commonwealth Court under Section 763 of the Judicial Code, not an action "originally" commenced in Commonwealth Court as required by Section 723(a) governing direct appeals to this Court as of right. *See Commonwealth, Department of Aging v. Lindberg*, 503 Pa. 423, 469 A.2d 1012. Moreover, as a matter addressed to Commonwealth Court's appellate jurisdiction it cannot be the subject of an appeal to this Court as of right under Section 723(a).

■ Were we to treat this action as one originally commenced in the Commonwealth Court under 42 Pa.C.S.

---

7. A fair reading of Colonel O'Brien's *pro se* petition to Commonwealth Court shows that he is challenging the Dauphin County Court of Common Pleas 1970 decision, which limited his credit for military service under Section 207(1) to the period from February 17, 1941 to February, 1946, the period of his compulsory military service.

§ 723(a), this appellant and any other litigant dissatisfied with an agency determination reviewable in that court's appellate jurisdiction, and thus appealable here only in the exercise of our sound discretion, could nevertheless appeal to us as of right.  This could be accomplished by the simple expedient of requesting the agency to hear again a matter already finally determined and, if refused, by commencing an action under Section 761 to compel an agency hearing. Moreover, such review could be obtained not just once, but again and again in an infinitely recursive loop persisting as long as a dissatisfied litigant desired.[8]  We are not inclined to interpret our jurisdictional statutes in such a manner.

We note that the language of Section 761, and particularly Section 761(c)[9], when read with Section 723 may seem to require such a recursive construction.  Such dilemmas are not uncommon in dealing with jurisdiction and the jurisdiction to determine it.  In such cases we must look beyond the seemingly unbreakable ring to which the language leads and consider the effects of breaking the ring at one or the other of its available points, appealing to a higher order of construction to attain a practical result.

■  We think such practicality is best served by today's holding that efforts to compel agencies to hold hearings they have finally refused are properly addressed to the

**8.**  Of course, if an agency refuses to act on a request for hearing in an effort to avoid a final decision that allows appeal, Commonwealth Court would certainly not be powerless to proceed originally under Section 761.  Such power is necessary to insure against wholly arbitrary agency refusals to act (a) when such refusals would deny fundamental constitutional rights or due process without any adequate alternative remedy or (b) when an action is wholly arbitrary but not final.  *Bethlehem Mines Corp. v. Commonwealth,* 462 Pa. 207, 340 A.2d 435 (1975).  *See also Ezy Parks v. Larsen,* 499 Pa. 615, 454 A.2d 928 (1982).

**9.**  We believe Section 761(c) is best explained as an attempt to codify *Bethlehem Mines Corp.* and remove the apparent lack of symmetry theretofore existing between the express grant of original jurisdiction to issue prohibition and mandamus to Superior Court but not Commonwealth Court.  *See Lindberg, supra.*

Commonwealth Court's appellate jurisdiction and thereafter on appeal from its final order to our discretionary jurisdiction.

■ In cases of possible doubt as to whether a matter should be addressed to us by way of appeal or allocatur, we suggest in the exercise of our supervisory power that requests for our review be presented fully in a manner analogous to that set forth for a petition for allocatur instead of as in a simple notice of appeal.[10] In such cases the party requesting relief can seek it alternatively under Sections 723 and 724. Such procedure will make it more likely that the matter will receive our proper attention, whether it is correctly an appeal as of right or by grace, and at the same time forestall possible dismissal for lack of jurisdiction at a time when it is too late to seek allocatur.

Bearing these considerations in mind we dismiss appellant's appeal as of right, treat his notice of appeal as a petition for allocatur and, as such, grant it and affirm the Order of Commonwealth Court.

Order Affirmed.

ROBERTS, C.J., and McDERMOTT, J., concur in the result.

NIX, J., did not participate in the consideration or the decision of this case.

10. Such appeals should include a concise statement of the grounds on which the jurisdiction of this Court and the statutory provision believed to confer jurisdiction is invoked and, if deemed necessary, the cases believed to sustain jurisdiction. See Rules of the Supreme Court of the United States 12.3 and 15.