Richard W. Henry, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

Argued January 30, 1984, before Judges ROGERS, CRAIG and COLINS, sitting as a panel of three. Reargued September 11, 1984, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, BARRY and COLINS.

*Jeffrey F. Bahls,* for petitioner.

*Joseph S. Rengert,* with him, *Francis X. O'Brien, Jr.,* for respondent.

OPINION BY JUDGE ROGERS, December 5, 1984:

By order dated March 6, 1984, a panel of this court vacated orders of the Background Investigation Screening Board of the Pennsylvania State Police permanently disqualifying the petitioner, Richard W. Henry, for employment as a state police officer. We directed the Screening Board to conduct a hearing into the asserted grounds for Henry's disqualifica-

tion. Our order and the opinion accompanying it are reported as *Henry v. Pennsylvania State Police,* 80 Pa. Commonwealth Ct. 595, 471 A.2d 1343 (1984).

On the application of the Pennsylvania State Police, we granted reargument.[1]

We have concluded that our order of March 6, 1984, should not be disturbed. We here extend the opinion accompanying the order, principally in order to make clear that it should not be supposed that we have held that all applicants for state or other public employment have personal or property rights in the positions sought, to the end that they may appeal rejections as adjudications pursuant to 2 Pa. C. S. §101-754. This case concerns only the procedures of the Pennsylvania State Police in the hiring of cadets for

---

[1] We put down for consideration at the time for reargument the petitioner's application, made during the pendency of his appeal, for an order of this court expunging the records in the possession of the State Police upon which, he alleges, the Screening Board's action was based. For the reasons following, we will schedule this matter which is addressed to our original jurisdiction for an evidentiary hearing.

The petitioner asks for expungement pursuant to the Criminal History Record Information Act, 18 Pa. C.D. §§9101-9183, with specific reference to Section 9123 allowing expunction of "juvenile records." The respondent State Police have filed an answer in which, while not opposing expungement of the records in its possession, dispute in some particulars the petitioner's averments of fact.

We require an evidentiary hearing for the reasons first, that, not having the records sought to be expunged, we cannot know whether they are proper subjects of the Criminal History Record Information Act. Second, Section 1923 requires that ten days prior notice be given the district attorney which would need to be given. Finally, although no question has been raised as to our subject matter jurisdiction, this is the first application for an order for expungement made to this court and we would benefit from the briefs and argument of counsel and an actual record in our consideration of whether it was intended that this court should have power to issue such orders.

State Police Academy classes and the application of those procedures to the circumstances of the petitioner, Richard W. Henry.

By a consent decree of the United States District Court for the Eastern District of Pennsylvania entered in June, 1974, the Pennsylvania State Police became bound to hire Police Academy Cadets in accordance with procedures set out in the decree. Although these procedures are called "interim standards" and seem to have been intended for later replacement by other tests and criteria to be developed by the State Police and approved by the court, the procedures laid down in the decree were in use when the petitioner applied in November, 1982. These procedures and the petitioner's performance in pursuance of his candidacy for appointment as a cadet were as follows: a written examination was administered in which the petitioner scored in the 98th percentile of applicants; a physical examination and an oral interview were given which the petitioner successfully completed. The petitioner was notified that his name was to be placed on the list of qualified candidates. The next and, if successfully completed, the final procedure was that of investigation of the petitioner by a Background Investigation Screening Board composed of a person appointed by the State Police, a person appointed by the Executive Director of the Pennsylvania Civil Service Commission and a person appointed by the Governor's Office of Personnel.

The Background Investigation Screening Board sent the petitioner a letter telling him that he was permanently disqualified from employment as a candidate for appointment because as a juvenile "almost 17 years old" he had constructed a homemade bomb which he and two companions exploded in an abandoned house; that the "applicant was arrested and

processed in the juvenile system with his accomplices resulting in reprimand, warning, and counseling''; and that the ''applicant did not list this offense on his application believing the records were expunged.''[2] By the same letter and, as required by the consent decree, the Background Investigation Screening Board notified the petitioner that he had the right to appeal his rejection to the Background Investigation Appeal Board, a body composed of the deputy directors of the State Police, the State Civil Service Commission and the Governor's Office of Personnel.

The petitioner alleges that he filed an appeal with the Background Investigation Appeal Board asking for an evidentiary hearing and requesting that he be given copies of the writings forming the basis for the reasons given by the Screening Board for disqualifying him. At or about the same time, the petitioner tells us, he supplied the Background Investigation Screening Board with documentary evidence that he did not have and never had had a juvenile record and that he had never been arrested, processed in the juvenile system, reprimanded, warned or counseled. The petitioner received no response to his request to be heard on his appeal and was provided with no copies of writings upon which the Screening Board had relied in disqualifying him. By letter over the signature of the Pennsylvania State Police Director of Personnel, the petitioner was informed that the Background Investigation Appeal Board, ''the last step in the State Police Cadet processing cycle, has reviewed your Background Investigation Report, including all correspondence pertaining thereto, and

---

[2] The Background Investigation Screening Board declared that question 32D of his application is clear and compelled the disclosure of this event. There having been no hearing below, we do not have for review the petitioner's application or the text of question 32D.

rendered the following decision: You have been PERMANENTLY disqualified for employment as a Pennsylvania State Police Cadet.''

The circumstances of this case—the existence of elaborate selection procedures for the assurance of fairness in selecting cadets, including the right to appeal from rejection by the Screening Board; the effort and expense required of the petitioner to compete for selection until the last step; the probing of his past followed by the apparent overstatement, if not mischaracterization, of his encounter with law enforcement authorities when he was a child; the permanent disqualification of the petitioner for employment without hearing or opportunity to be heard— all impel us to conclude, as the panel did, that the orders appealed from affected the petitioner's personal, if not property rights, privileges and immunities.

We add that the respondent's contention that the right conferred on the applicant by decree to appeal to the Appeal Board does not include the rights to appear, to be heard and to produce evidence showing that invidious facts found by the Screening Board are mistaken, seems to us to be marked by want of intelligent and reasonable consideration.

We adhere to the March 6, 1984 order.

ORDER

AND Now, this 5th day of December, 1984, after reargument, we reaffirm and republish our order in this matter made March 6, 1984.

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent. The majority relies upon so-called ''personal rights'' as the basis for creating

a hearing entitlement in a rejected State Police applicant, however, there is no legal support for its holding that such rights exist here. It seems to conclude that the Federal District Court consent decree entered into by the State Police in June, 1974, is founded upon a recognition of such personal rights. This is not so. The application procedures implemented by this decree were devised for the sole purpose of increasing the number of non-white and Hispanic members of the State Police. *Oburn v. Shapp,* 393 F. Supp. 561, 569 (E.D. Pa. 1975), *aff'd* 521 F.2d 142 (3d Cir. 1975). The parties to the consent decree did not intend to create a personal rights-based hearing entitlement in all applicants generally. Moreover, they could not have done so, as this was beyond the scope of the lawsuit before the Federal Court. I would therefore affirm the order of the Background Screening Board.