515 A.2d 351

James Hasinecz, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

Argued May 8, 1985, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and PALLADINO.

*Anthony C. Busillo, II, Mancke, Lightman and Wagner,* for petitioner.

*Michael L. Harvey,* Deputy Attorney General, with him, *Allen C. Warshaw,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE DOYLE, September 23, 1986:

This is an appeal by James Hasinecz (Petitioner) from an August 9, 1984 letter from the Director of the Bureau of Personnel of the Pennsylvania State Police denying Petitioner's request for a hearing. Petitioner had sought a hearing of (1) the State Police's refusal to reinstate him and (2) the State Police's refusal to grant him benefits for the period subsequent to his retirement which benefits Petitioner alleges he is entitled to under Section 1 of the Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §637 (Heart and Lung Act).

On July 15, 1981 Petitioner notified the State Police that he wished to exhaust his sick and annual leave and then take a disability retirement; in fact he did retire on December 31, 1981. Petitioner maintains that although he wanted to be placed on work related disability retirement he was actually placed on non-work related

disability retirement. Thus, in order to establish the work related nature of his disability, Petitioner instituted a workmen's compensation action and won a favorable determination in 1984. Because of the workmen's compensation finding that Petitioner's disability was work related, the State Police retroactively credited Petitioner with Heart and Lung Act benefits, but only for the period between the onset of his disability and his retirement. Then, in a May 9, 1984 letter to the State Police, Petitioner's counsel indicated that Petitioner wanted the State Police to "revoke the actions taken by the [State Police] so that [Petitioner] may be placed under The Heart-Lung Act and be restored to full duty when his doctors indicate he is able." In a May 21, 1984 letter to Petitoner's counsel the State Police Director of the Bureau of Personnel informed counsel that pursuant to a policy of which Petitioner was aware (a fact he does not deny) enlisted members of the State Police who terminate their employment are, categorically, not reinstated. A June 4, 1984 letter to Petitioner's counsel from the chief counsel for the State Police reiterated this position. Petitioner then, in an August 2, 1984 letter, requested a hearing before the State Police Heart and Lung Review Board to determine (1) whether he was entitled to benefits for the period subsequent to his resignation, (2) whether his condition was permanent (which would effectively bar Heart and Lung Act benefits) and (3) "the related legal implications of his prior retirement." An August 9, 1984 letter from the Director of the Bureau of Personnel denied the request for a hearing and Petitioner has timely appealed from that denial.

On appeal Petitioner maintains that the refusal to grant him a hearing on the issues of reinstatement and heart and lung benefits constituted the deprivation of property rights without due process. Under Sections

504 and 101 of the Administrative Agency Law, 2 Pa. C. S. §504 and §101, due process in the form of notice and an opportunity to be heard is required only when a personal or property right or other similar interest is affected by a final order. An individual has a property interest mandating due process protection only when he has a legitimate claim of entitlement to the asserted right, *Marino v. Commonwealth*, 87 Pa. Commonwealth Ct. 40, 486 A.2d 1033 (1985), or in other words, an enforceable expectation governed by statute or contract. *Amesbury v. Luzerne County Institution District*, 27 Pa. Commonwealth Ct. 418, 366 A.2d 631 (1976); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Additionally, because it has been held that duly promulgated "legislative" regulations have the force and effect of statutory law, *Girard School District v. Pittenger*, 481 Pa. 91, 392 A.2d 261 (1978), they also can be the source of a substantive property right.

Petitioner asserts that his substantive right to reinstatement stems from the State Police policy of not reinstating former members. We fail to see how a policy which establishes *no* right to reinstatement could create, by its existence, a right to the very thing it denies. Accordingly, we reject Petitioner's argument that this policy, in and of itself, provides a basis for his substantive right.

Petitioner also relies upon this Court's decision in *Burgerhoff v. Pennsylvania State Police*, 49 Pa. Commonwealth Ct. 49, 410 A.2d 395 (1980), to support his contention that he has a property right in his reinstatement. In *Burgerhoff* a retired police officer filed an *original* action in this Court after his request for reinstatement was denied. The State Police filed a preliminary objection maintaining that the State Police Commissioner's letter denying reinstatement was an adjudication which should have been appealed to this

Court in our *appellate* jurisdiction. The *Burgerhoff* Court held that the State Police Commissioner's letter refusing reinstatement constituted an adjudication *for purposes of appeal* under Section 702 of the Administrative Agency Law, 2 Pa. C. S. §702, and, thus, that the appeal was within our appellate jurisdiction pursuant to Section 763 of the Judicial Code, 42 Pa. C. S. §763.[1] Accordingly, the Court sustained the objection *on the grounds of timeliness* and dismissed the original action. The narrow holding in *Burgerhoff* (that the appeal was one within our appellate jurisdiction and not our original jurisdiction) would appear to be in accord with the Pennsylvania Supreme Court decision in *O'Brien v. State Employes' Retirement System*, 503 Pa. 414, 469 A.2d 1008 (1983), *cert. den.*, 469 U.S. 816, 105 S. Ct. 83 (1984). *See supra* note 1. To the extent, however, that *Burgerhoff*, in deeming the letter an "adjudication," can be read as implying that as a matter of law a state trooper has a property right in reinstatement, any language in the opinion inviting that implication is expressly rejected. Although *Burgerhoff* did hold, *for purposes of establishing the nature of our jurisdiction*, that the denial of reinstatement was an adju-

---

[1] For a discussion as to why we believe an agency's refusal to grant a hearing is an action within our appellate jurisdiction, and thus treat the instant appeal as such, *see Whittaker v. Pennsylvania State Police*, 100 Pa. Commonwealth Ct. 631, 515 A.2d 347 (1986). Based upon our analysis in *Whittaker* we believe that while *Burgerhoff* may appear to conflict with the Pennsylvania Supreme Court's decision in *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981) (which was decided subsequent to *Burgerhoff*), in light of the Pennsylvania Supreme Court's decision in *O'Brien v. State Employes' Retirement System*, 503 Pa. 414, 469 A.2d 1008 (1983) (which was decided subsequent to *Callahan*) *Burgerhoff's* holding that a denial of a hearing falls within our appellate jurisdiction would appear to be a correct statement of the current law.

dication, the procedural posture of the *Burgerhoff* case makes it impossible for the opinion to be construed as a decision on the merits that the letter refusing reinstatement affected, as a matter of law, Burgerhoff's property rights.

The difficulty here is principally one of semantics. Appeals within our appellate jurisdiction are from "adjudications." *See* Section 763 of the Judicial Code and Section 702 of the Administrative Agency Law. Thus, whether an appeal be from an agency hearing, or, from its refusal to hold a hearing coupled with some claimed deprivation or injury to the complaining party, the action appealed from is often referred to as an "adjudication" in the broad sense. The difficulty arises however when the definition of adjudication appearing in Section 101 of the Administrative Agency Law is examined. Section 101 defines an adjudication as:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

In instances where no hearing has been held because an agency maintains that there is no property right which would trigger the requirement of a hearing, it is illogical to suggest that the mere *process* of appealing creates a property right simply because the order appealed from is final and is called an adjudication. Whether a property right exists in the narrower sense of the definition in Section 101 of the Administrative Agency Law is a legal question requiring examination of

statutes, regulations, and/or contracts. A substantive property right could never be established simply because the appealable order refers to the final determination as an adjudication. Thus, it must be that an "adjudication," *examined for purposes of establishing this Court's original or appellate jurisdiction,* does not always mean an order which does, in the final analysis, affect a property right. We therefore believe that *Burgerhoff* must be read to mean that the letter denying reinstatement constituted an adjudication only in the broad sense that it was a final order of a *purported* property right. While we are constrained to recognize that this interpretation of "adjudication" is not immediately apparent, it is reconcilable with the statutory definition of the term in Section 101 of the Administrative Agency Law. In light of the *O'Brien* decision, the hybrid nature of this Court's jurisdiction, and the absurd result which would occur were we to hold that an appeal itself could create a property right, we can perceive of no other rational analysis or conclusion.

Additionally, the property rights of a State Police cadet applicant found to exist in *Henry v. Pennsylvania State Police,* 80 Pa. Commonwealth Ct. 595, 471 A.2d 1341 (1984) *reaffirmed,* 86 Pa. Commonwealth Ct. 287, 484 A.2d 846 (1984), are not present in the instant litigation. In *Henry,* a candidate for cadet status as a State Police officer was permanently disqualified from employment with the State Police by the Background Investigation Screening Board (BISB) and was denied an evidentiary hearing by the Background Investigation Appeal Board to contest the disqualifying evidence even though the cadet applicant denied the very existence of the underlying charges. What personal and property rights existed in *Henry* were reposited in the applicant by the *Bolden* consent decree of the United States District Court for the Eastern District of Pennsylvania en-

tered in June of 1974. That consent decree, binding the Pennsylvania State Police, established an application process for cadet applicants including certain "interim standards" and the right to appeal a rejection by BISB to the Background Investigation Appeal Board. Judge ROGERS, speaking for the *Henry* Court in reaffirming the Court's decision ordering the Appeal Board to conduct a hearing stated:

> We have concluded that our order of March 6, 1984, should not be disturbed. We here extend the opinion accompanying the order, principally in order to make clear that it should not be supposed that we have held that all applicants for state or other public employment have personal or property rights in the positions sought, to the end that they may appeal rejections as adjudications pursuant to 2 Pa. C. S. §101-754. This case concerns only the procedures of the Pennsylvania State Police in the hiring of cadets for State Police Academy classes and the application of those procedures to the circumstances of the petitioner, Richard W. Henry.

*Id.* at 290, 484 A.2d at 847-848.

Although an individual may have a reasonable expectation to continued employment if a tenured public servant, *Board of Regents of State Colleges,* or to continued benefits once granted, *Palmeri v. Pennsylvania State Police,* 82 Pa. Commonwealth Ct. 348, 474 A.2d 1223 (1984), *aff'd,* 508 Pa. 544, 499 A.2d 278 (1985); *Callahan v. Pennsylvania State Police,* 494 Pa. 461, 431 A.2d 946 (1981), an individual does not have a personal or property right to become employed, or to reemployment, absent a clear statutory or contractual basis establishing that right. We note that in *Burgerhoff* the Court cited to no statute or regulation which es-

tablished a basis for any substantive right to reinstatement. Finding in the instant case no substantive basis for a right to reinstatement, we hold that no property right was affected and, hence, there was no adjudication which deprived the Petitioner of a right for which a hearing was required.

Considering the substantive issue on appeal here requires a recognition that the question of whether Petitioner is entitled to Heart and Lung Act benefits depends upon whether he meets the criteria as set forth in the statute establishing the right to such benefits. Section 1 of the Heart and Lung Act, 53 P.S. §637, reads in pertinent part:

> *[A]ny member of the State Police Force* . . . who is injured in the performance of his duties, . . . and . . . is temporarily incapacitated from performing his duties shall be paid by the Commonwealth of Pennsylvania *if a member of a State Police Force* . . . until the disability arising therefrom has ceased. (Emphasis added.)

The clear language of the statute makes entitlement to benefits contingent upon membership in the police force; there is no indication that *former* members are entitled to benefits. This reading of the statute comports with the Pennsylvania Supreme Court's opinion in *Kurtz v. Erie,* 389 Pa. 557, 133 A.2d 172 (1957) wherein that Court stated that the purpose of the Heart and Lung Act is to ensure prompt medical attention to police personnel thereby *assuring a rapid return to duty* and thus benefiting the municipality.

Petitioner maintains that once he was granted benefits, they could not be terminated without a hearing to determine that his disability was permanent. But Petitioner's benefits were terminated because of his *retirement,* not because his disability was permanent. It is this fact which distinguishes Petitioner's situation

from that in this Court's *Palmeri* case upon which he relies. In *Palmeri* a disabled trooper *who had not retired* had his benefits terminated on the basis that his disability was permanent. The termination was instituted without a hearing to decide whether the disability was permanent in nature, and we held that the termination of Palmeri's right to benefits (granted him under the statute) could not be effected without a hearing. Thus, in *Palmeri* there was no dispute as to whether the trooper remained within the class of persons granted benefits under the statute. Petitioner here does not even assert that he is a "member" of the State Police and, therefore he is not an individual who falls within the provisions of the statute. Not being an individual to whom the statute grants a right, Petitioner cannot claim that the due process protections emanating from that right apply to him. Accordingly, no hearing is required. The action of the State Police is affirmed.

ORDER

Now, September 23, 1986, the August 9, 1984 determination of the Pennsylvania State Police denying Petitioner a hearing is affirmed.