515 A.2d 347

Donald L. Whittaker, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police, Respondent.

Argued May 8, 1985, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and PALLADINO.

*Anthony C. Busillo, II, Mancke, Lightman* & *Wagner,* for petitioner.

*Gregory R. Neuhauser,* Deputy Attorney General, with him, *Allen C. Warshaw,* Senior Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE DOYLE, September 23, 1986:

This is an appeal by Donald L. Whittaker (Petitioner) from a determination of the Background Investigation Appeal Board (Appeal Board) disqualifying Petitioner as an applicant for the position of a cadet in the State Police. On February 23, 1984 the State Police Director of Personnel notified Petitioner that the State Police Background Investigation Screening Board

(BISB) had disqualified Petitioner as a candidate for appointment as a State Police Cadet. This letter advised Petitioner of his right to appeal this determination to the Appeal Board and stated that in order to do so Petitioner "must submit a written rebuttal to the specified disqualification factors[1] within twenty (20) days of the date appearing on this notification." The letter further stated, "[i]f you desire to present evidence, this fact must be stated in your appeal specifying the nature of the evidence to be offered (including witnesses' names), *as well as the reason(s) why such evidence cannot be presented adequately in the written rebuttal (appeal)*." (Emphasis added.)

Petitioner timely appealed the BISB decision and while Petitioner listed witnesses he wished to call and the general nature of their proposed testimony, he did not indicate why their testimony could not be submitted in written rebuttal form. A March 9, 1984 letter from the Director of the Bureau of Personnel indicated receipt of Petitioner's appeal but denied Petitioner's request for a hearing inasmuch as he had not indicated why written submissions of rebuttal would be insufficient. A later letter from Petitioner's attorney again requested that Petitioner be permitted to present live witnesses but this letter also gave no reason for the request.

---

[1] The February 23, 1984 letter stated under the heading of disqualification factors:

> Applicant has been employed as a police officer. Numerous incidents indicate he lacks self restraint/self discipline. He has repeatedly been accused of initiating or escalating the level of violence during arrests or provoking those he was arresting. His ability to follow orders and procedures is also questionable. Some prior supervisors and co-workers indicate he insists on doing things his own way without following procedures. There are indications he has abused his authority as a police officer. He has been given a written reprimand for misusing a piece of fire equipment.

By letter dated May 3, 1984 Petitioner was informed that the Appeal Board had affirmed the BISB determination. The letter also stated that the Appeal Board's decision was "the last step in the State Police Cadet processing cycle". In a letter dated May 9, 1984 Petitioner's attorney again requested the opportunity to appear before the Appeal Board. The letter also alleged that thirty-five affidavits submitted by Petitioner had been reviewed for "only a few minutes" by the Board before rejecting Petitioner as a cadet. When the May 9, 1984 letter received no reply, Petitioner's attorney again requested a hearing on August 13, 1984. In a letter dated August 22, 1984 the State Police, by its chief counsel, again advised Petitioner's counsel that no hearing would be forthcoming. Petitioner then filed an appeal with this Court on September 17, 1984. The State Police in response filed a motion to quash Petitioner's appeal as untimely filed. The question of whether Petitioner's appeal is timely depends upon whether the May 3, 1984 letter constitutes the final appealable order.

Petitioner asserts that the May 3, 1984 letter is not a final appealable order but, rather, is an "invalid" adjudication. He cites *Callahan v. Pennsylvania State Police,* 494 Pa. 461, 431 A.2d 946 (1981), in support of this proposition. In *Callahan* the Pennsylvania Supreme Court held that a letter advising a state police officer of the impending termination of his heart and lung benefits was an invalid adjudication because it failed to comply with the statutory requirement that a final determination affecting property rights, *i.e.,* an "adjudication", be issued only after notice and an opportunity to be heard.[2] The Court thus reasoned that the letter and

---

[2] The requirements of notice and an opportunity to be heard apply only to situations where personal or property rights, privi-

subsequent termination of the officer's benefits[3] provided no basis for *appeal* to this Court but, rather, the appropriate action was one within our original jurisdiction.

But in a more recent decision, *O'Brien v. State Employes' Retirement System*, 503 Pa. 414, 469 A.2d 1008 (1983), *cert. denied*, 469 U.S. 816, 105 S.Ct. 83 (1984), the Pennsylvania Supreme Court held that denial of a hearing by an agency is a final action appealable to this Court in our *appellate* jurisdiction. *O'Brien* did not cite to or distinguish *Callahan*. But, because *O'Brien* was decided subsequent to *Callahan*, to the extent that the two approaches are in conflict, we believe the latter decision must control. Additionally, *O'Brien*, by holding that matters such as the instant one are within our appellate jurisdiction, has the effect of limiting direct appeals to the Pennsylvania Supreme Court, a result that the Supreme Court has stated is desirable inasmuch as it comports with the legislature's intent to restrict direct appeals to the State's highest Court. *See*

leges, immunities, duties, liabilities or obligations are finally affected. *See* Sections 504 and 101 of the Administrative Agency Law, 2 Pa. C. S. §504 and §101. Because we have decided this case on the controlling issue of timeliness, and hence jurisdiction, we decline to address the issue of whether Petitioner had a personal or property interest in his status as an applicant for the position of a State Police cadet. Thus we express no opinion as to the applicability to Petitioner of the holding in *Henry v. Pennsylvania State Police*, 80 Pa. Commonwealth Ct. 595, 471 A.2d 1341 (1984) *reaffirmed*, 86 Pa. Commonwealth Ct. 287, 484 A.2d 846 (1984) and the *Bolden* consent decree cited therein.

[3] The *Callahan* Court held:

> Since the letter was not a valid adjudication, the January 5, 1978 date has no legal significance. At best, it represented an expression of appellee's intention to act in a certain manner. It was not until the anticipated action was actually taken on February 22, 1978 that appellant had a legal basis to complain.

*Callahan*, 494 Pa. at 465-66, 431 A.2d at 948.

*Pennsylvania Department of Aging v. Lindberg,* 503 Pa. 423, 469 A.2d 1012 (1983) where the Supreme Court summarized this facet of the jurisdictional issue in stating:

> Thus we hold that all matters involving statutory review of final adjudications of state agencies including agency adjudications finally denying an aggrieved person a hearing and all process issued pursuant or ancillary to that review is within Commonwealth Court's appellate, not its original, jurisdiction and thus not directly reviewable in this Court as of right under Section 723(a).

*Id.* at 435, 469 A.2d at 1019. *Lindberg* likewise did not discuss *Callahan.*[4] We will utilize the *O'Brien* approach, therefore, and treat this matter as one within our appellate jurisdiction.

In order to rule on the motion to quash the appeal as one untimely filed in this Court, *i.e.,* filed more than thirty days after entry of the final order, we must determine whether the May 3, 1984 letter *was* the final appealable order or whether as asserted by Petitioner, the August 22, 1984 letter was the final order triggering the running of the appeal period. As noted earlier, the May 3, 1984 letter stated that the Appeal Board's decision was "the last step in the State Police Cadet processing cycle." But, Petitioner maintains that because the

---

[4] We also note that *Burgerhoff v. Pennsylvania State Police,* 49 Pa. Commonwealth Ct. 49, 410 A.2d 395 (1980) was a decision of this Court holding that a petition for review, filed pursuant to this Court's *original* jurisdiction, was in effect an *appeal* from an agency's final adjudication, and we accordingly dismissed the petition as untimely when it was not filed within the thirty day appeal period. This decision, of course, predates *Callahan.* For further discussion of this point see *Hasinecz v. Pennsylvania State Police,* 100 Pa. Commonwealth Ct. 622, 515 A.2d 351 (1986).

May 3, 1984 letter stated that any further questions should be addressed to the State Police, Petitioner was not, at that point, certain that no hearing would be granted and that he remained uncertain about this matter until receiving the August 22, 1984 letter. Inasmuch as the August 22, 1984 letter also stated that Petitioner should contact the State Police chief counsel if he wanted to discuss the matter further, Petitioner's attempts to distinguish the "finality" of the two letters must fail. Moreover, utilizing Petitioner's subjective impression of when the request for hearing was finally denied, especially in light of the May 3, 1984 letter's characterization of the Appeal Board's determination as the final step in the process, seems to us to be recommending adoption of a standard fraught with uncertainty. Certainly, it was the May 3, 1984 letter which finally determined that Petitioner was disqualified as a candidate for appointment. We hold, therefore, that the May 3, 1984 letter constituted the final appealable order.

Even assuming, as Petitioner contends, that his May 9, 1984 and August 13, 1984 letters were requests for reconsideration Petitioner has cited no authority, nor are we aware of any, that such requests *when not granted* operate to toll the thirty day appeal period to this Court. To the contrary, Pa. R.A.P. 1701(b)(3) provides that if a timely petition for reconsideration is *granted* within the time prescribed by law for granting such a petition, an appeal to this Court is inoperative. Reconsideration was *not* granted in the instant case.

Particularly illustrative of the difficulties of Petitioner's contention that his May 9, 1984 and August 13, 1984 letters prevented the appeal period from running is *Andrukaitis v. Pennsylvania State Police*, 46 Pa. Commonwealth Ct. 182, 405 A.2d 1153 (1979). In *Andrukaitis* a state trooper who voluntarily resigned sought to be rehired although when he resigned he had signed a

document indicating that he never expected to be reinstated. Andrukaitis thereafter (over a period in excess of seven years) made four separate requests to be rehired and received four separate responses each explaining the policy, known to Andrukaitis at the time he resigned, that State Police do not rehire individuals who voluntarily resign. What Andrukaitis appealed to this Court was the *last* letter refusing his request for reinstatement. We rejected his argument that this last letter "reevaluated" his claim and constituted a separate and independently appealable adjudication, noting that the last three letters he received merely reiterated the State Police's position. We wrote:

> Although the last letter talks about a reevaluation, it says nothing that the other letters do not say, and we cannot agree that it finally determines [Andrukaitis'] rights. We are quite unwilling to hold that [the State Police], by favoring [Andrukaitis] with written replies to his repeated requests for reinstatement, when it could have easily have ignored those requests, has somehow caused [Andrukaitis'] rights to be so grossly enlarged as to allow him to appeal to this Court almost ten years after his voluntary resignation.

*Id.* at 184, 405 A.2d at 1155. Although in the instant case the time span is not ten years, the logic of *Andrukaitis* is applicable. The August 22, 1984 response to Petitioner's post May 3, 1984 correspondence merely reiterated the position that no hearing would be granted and thus denied reconsideration. Additionally, Petitioner's counsel was aware of the right to appeal as of May 3, 1984 as is evidenced by his remarks indicating such action in his May 9, 1984 letter. It is thus apparent from the foregoing that it is the May 3, 1984 letter which triggered the beginning of the appeal period to this

Court and that a September 17, 1984 appeal of that order was beyond our thirty day mandatory appeal period. *See* Pa. R.A.P. 1512(a)(1). Accordingly, the motion to quash the petition as untimely filed is granted.

## ORDER

NOW, September 23, 1986, the motion to quash the appeal of Donald L. Whittaker in the above-captioned matter is hereby granted.