577 A.2d 951

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and State Farm Fire and Casualty Company, Petitioners,**

v.

**INSURANCE DEPARTMENT and Constance B. Foster, Insurance Commissioner of the Department of Insurance, Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1990.

Decided July 10, 1990.

Jane L. Dalton, with her, James J. McCabe, Amy E. Wilkinson, Edward G. Biester, III, and John C. Fleming, Duane, Morris & Heckscher, for petitioners.

Richard J. Enterline, Asst. Counsel, with him, Linda J. Wells, Chief Counsel, and Victoria A. Reider, Deputy Chief Counsel, of the Ins. Dept., and James J. Haggerty, General Counsel, Richard D. Spiegelman, Executive Deputy General Counsel, William W. Warren, Jr., Chief of Litigation, Gregory E. Dunlap and Ernest R. Closser, III, Deputies General Counsel, of the Office of General Counsel, for respondents.

646

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

DOYLE, Judge.

This is an appeal by State Farm Mutual Automobile Insurance Company (State Farm) from a letter of the Insurance Department (Department) denying State Farm a hearing on the mandatory rollback of its rates pursuant to the Act of February 7, 1990, P.L. 8 (Act 6).[1]

The following facts appear to be undisputed. On October 2, 1989 State Farm submitted a filing with the Department to revise its private passenger automobile insurance rates. The rates then existing for State Farm had been approved by the Commissioner effective August 2, 1988. The Department acknowledged State Farm's filing on October 5, 1989 and extended the thirty day review period for an additional thirty days as authorized under Section 4(d) of The Casualty and Surety Rate Regulatory Act (Rate Act), Act of June 11, 1947, P.L. 538, *as amended*, 40 P.S. 1184(d). Thereafter, on December 14, 1989, the Department requested an additional thirty days for review. State Farm voluntarily agreed on December 15, 1989. The Department did not disapprove the filings during either the thirty-day statutory review period or the two thirty day extensions. Accordingly, the rate filings were deemed approved by operation of law effective on January 15, 1990. On February 7, 1990 State Farm formally notified the Department that it considered the filings deemed approved. Later that same day Act 6 was signed by the Governor. The provisions of Act 6 became effective immediately. It is Section 1799.7(d) of that Act, 75 Pa.C.S. § 1799.7(d), which is specifically at issue in this case. This Section provides in pertinent part:

Notwithstanding any provisions of the law to the contrary, all private passenger motor vehicle rates in effect on December 1, 1989, may not be changed so as to be

1. This act amended, inter alia, the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §§ 1701–1798. We will refer to the amendments as Act 6.

effective prior to July 1, 1990. Any rate requests filed with the commissioner to be effective on or after December 1, 1989, whether or not such requests were approved by the commissioner or by operation of law prior to, on or after December 1, 1989, are hereby disapproved as being in conflict with this chapter.

Pursuant to this provision State Farm's rates were rolled back to those which had been in existence on December 1, 1989, *i.e.*, the rates approved August 2, 1988.

When Act 6 became effective State Farm, on March 2, 1990, sought from the Department a hearing on the mandatory rollback of the rates deemed approved January 15, 1990. The Department took the position that it could not grant a hearing because the rate rollback was mandated by operation of law, and because Section 5(a) of the Rate Act, 40 P.S. § 1185(a) (pertaining to disapproval of filings by the Commissioner) as well as Section 2005 of Act 6, 75 Pa.C.S. § 2005 (pertaining to review of an action taken by the Commissioner without a hearing) did not authorize the Commissioner to grant a hearing because those provisions permit a hearing only where an adverse decision is rendered *by the Commissioner*. The Department's letter, however, further advised State Farm that:

Act 6 requires all private passenger motor vehicle insurers to make a rate filing by May 1, 1990 which reflects the cost savings generated by the law. In the context of this rate filing, the Department will consider all the circumstances affecting the company between December 1, 1989 and July 1, 1990, including the adequacy of the December 1, 1989 rate. Upon showing of "extraordinary circumstances", the Department will take whatever action is necessary to adjust rates so as to satisfy constitutional requirements.

The provisions to which the Department's letter refers pertinently state:

(a) Rate filing.—All insurers and the Assigned Risk Plan must file for new private passenger motor vehicle rates

on or before May 1, 1990. These rates shall apply to all policies issued or renewed on and after July 1, 1990.

(b) Rate reductions.—The rates charged by insurers under the filing required by subsection (a) shall be reduced from current rates as follows:

(1) For an insured electing the limited tort option under section 1705 (relating to election of tort options), the total premium charged for any selection of coverages and coverage limits shall be reduced by at least 22% from the total premium for the same selection of coverages and coverage limits in effect on December 1, 1989.

(2) For an insured bound by the full tort option under section 1705, the total premium charged for any selection of coverages and coverage limits shall be reduced by at least 10% from the total premium for the same selection of coverages and coverage limits in effect on December 1, 1989.

(3) An insurer aggrieved by the rate reductions mandated by *this subsection* may seek relief from the commissioner, which relief may be granted when the commissioner deems necessary in extraordinary circumstances. (Emphasis added.)

Because State Farm was dissatisfied with the Department's refusal to grant a hearing it filed the instant appeal. On appeal State Farm maintains that the rollback provision in Act 6 is illegal because it permits an unconstitutional taking and also violates due process and equal protection.[2] State Farm also complains that the rollback provision deprives it of a fair and adequate rate of return and arbitrarily imposes inadequate and discriminatory rates. It also asserts that the "extraordinary circumstances" provision of Act 6 is an illegal delegation of legislative power to the Commissioner.

**2.** State Farm challenges the rollback provision only as it applies to the window period from December 1, 1989 to July 1, 1990. It has raised no challenge here to the reductions mandated to take effect on July 1, 1990.

The Department counters that because it is willing to afford State Farm a hearing in conjunction with the May 1, 1990 rate filing, any temporary deprivation of its property is constitutionally permissible. It further maintains that the legislature had a rational basis for passing Act 6 and that there has been no unconstitutional delegation of power by the legislature to the Commissioner.

We begin with the due process concern. Our federal Constitution pertinently provides that "No State shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. Our State Supreme Court has found a similar protection in Article V, Section 9 of the Pennsylvania State Constitution. *See Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 446 n. 8, 370 A.2d 685, 689 n. 8 (1977).[3] It is clear that in order for due process rights to attach there must be a deprivation of a property right or other similar interest. *Hasinecz v. Pennsylvania State Police*, 100 Pa.Commonwealth Ct. 622, 515 A.2d 351 (1986). Such a substantive right may spring from, *inter alia,* a contract. *Id.* On January 15, 1990 State Farm's proposed rate increase was deemed into effect pursuant to Section 4(d) of the Rate Act. Once that event occurred State Farm acquired a contractual and, hence, a property right in those rates. Thereafter it could not be deprived of that right without due process of law. We must thus determine whether Act 6 affords State Farm that due process.

In determining what process is due under a certain set of circumstances the inquiry must begin with the examination of the precise nature of the government function involved as well as the precise private interest that has been affected by the government action. *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *see also Boddie*

---

**3.** Because our State Supreme Court has adopted the same analysis as is employed by the federal courts when examining a due process challenge, *see Pennsylvania Coal Mining,* we shall not discuss the state and federal claims separately and shall rely primarily upon federal law.

*v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). And, our State Supreme Court has indicated that when weighing a government function against a private interest there is a clear preference for procedural protections before a government action threatens to deprive a citizen of an interest. *Pennsylvania Coal Mining; see also Boddie,* 401 U.S. at 378–79, 91 S.Ct. at 786–87.

In this case State Farm has an interest, via its contract (the approved rate filing), in receiving a fair return from policyholders for the coverage it provides them. It is, of course, in the business to make a profit and it would be naive to pretend otherwise. There is certainly nothing wrong with its profit-making goal provided it does not achieve its ends by charging rates which would be excessive under the Rate Act. The government's interest in the matter is clearly to curb escalating insurance costs. These then are the competing interests. The inquiry thus becomes what procedural safeguards are provided to review the legislature's mandate.

The Department takes the position that under subsection (b)(3) it can, after July 1, 1990, examine rates which were rolled back from December 1, 1989 to July 1, 1990 and grant relief to insurance companies by authorizing increased rates in the context of the post May 1, 1990 rate filings. Thus it asserts that because ultimately review is possible and eventual relief from the rollback plausible, the rollback provision of Act 6 is not unconstitutional on due process grounds. We disagree.

First, the clear language of subsection (b)(3) indicates that the "extraordinary circumstances" provision, upon which the Commissioner relies for authority to hold a hearing in this matter, applies to rate reductions mandated by "this subsection." The other portions of subsection (b), however, refer only to the rate rollbacks *after* July 1, 1990, i.e., the ten percent and twenty-two percent rate reductions. There is absolutely nothing in subsection (b)(3) which indicates that the Commissioner has the authority to examine

the rollback between December 1, 1989 and July 1, 1990, let alone grant relief from that rollback.

Further, as a practical matter, if the Insurance Commissioner were permitted to do so and did authorize rate increases on the basis of extraordinary circumstances, in the context of the new rate filings, the result would be to pass State Farm's previous losses due to the rate rollback provision onto new policyholders. Section 3(d) of the Rate Act, 40 P.S. § 1183(d), prohibits charging rates that are, *inter alia,* excessive. If the Commissioner were to authorize an increase in premiums under the extraordinary circumstances provision so that State Farm could recoup from new policyholders losses it sustained when the rollback was applied to its previous policyholders those rates would clearly be excessive as to the new policyholders and thus violative of the Rate Act.

Accordingly, we must conclude that the Commissioner's reliance upon the extraordinary circumstances provision is misplaced. Our careful scrutiny discloses that the Act provides no mechanism for review or recoupment of new approved rates rolled back to December 1, 1989. We recognize and sympathize with the laudable goal of trying to contain escalating insurance costs. This goal cannot be accomplished, however, at the expense of an insurance company's constitutional rights. We, therefore, hold that Section 1799.7(d) of Act 6 is unconstitutional on its face insofar as it purports to roll back rates which were approved before February 7, 1990.[4] State Farm is thus permitted to obtain from its policyholders the rate it was entitled to under its October 2, 1989 filing deemed approved January 15, 1990.[5]

**4.** We are aware that a strong presumption exists in favor of the constitutionality of a statute, and it will not be overturned unless it clearly, palpably, and plainly violates the Constitution. *Kirk v. Unemployment Compensation Board of Review,* 57 Pa.Commonwealth Ct. 92, 425 A.2d 1188 (1981). That stringent standard has been met here.

**5.** Because of our disposition of this case on the due process issue we need not reach the other issues raised by State Farm. Further, we express no opinion as to the constitutionality of the other provisions of Act 6 and nothing in this opinion should be read to suggest that we

## ORDER

NOW, July 10, 1990, the letter of the Insurance Commissioner denying a hearing is hereby affirmed inasmuch as she lacks authority to conduct a hearing. State Farm, however, is entitled to relief as set forth in the foregoing opinion.

have determined that the ten and twenty-two percent rollback provisions to take effect on July 1, 1990 are unconstitutional.