585 A.2d 1160

**The OHIO CASUALTY INSURANCE COMPANY, West American Insurance Company, and American Fire and Casualty Company, Petitioners,**

**v.**

**INSURANCE DEPARTMENT OF the COMMONWEALTH of PENNSYLVANIA and Constance B. Foster, Insurance Commissioner, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1990.

Decided Jan. 18, 1991.

300

302

Richard E. Freeburn, Wilt, Magdule & Freeburn, Harrisburg, for petitioners.

Richard J. Enterline, Assistant Counsel, with him, Linda J. Wells, Chief Counsel, and Victoria A. Reider, Deputy Chief Counsel, Harrisburg, for respondents.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, PELLEGRINI, KELLEY and BYER, JJ.

DOYLE, Judge.

This is an appeal by Ohio Casualty Insurance Company, West American Insurance Company, and American Fire and Casualty Company (Petitioners)[1] from an order of the Insurance Commissioner (Commissioner) dismissing without a hearing Petitioners' request for review of an extraordinary circumstances filing because Petitioners did not first file compliance rate filings under Section 1799.7 of the Motor Vehicle Financial Responsibility Law (Law), 75 Pa. C.S. § 1799.7. Section 1799.7 was added to the Law by Section 19 of the Act of February 7, 1990, P.L. 8 (Act 6).

Because the Insurance Department contends that the issue before us is now moot, we must set forth in detail the procedural history of this case. On February 7, 1990, Act 6 was signed into law. Among other things it mandated that effective July 1, 1990 insurers must reduce their then-current insurance rates for private passenger motor vehicles by twenty-two percent for policyholders selecting a limited tort option and ten percent for policyholders selecting a full tort option. Specifically, Section 1799.7, which forms the basis for this litigation, pertinently provides:

(a) **Rate filing.**—All insurers and the Assigned Risk Plan must file for new private passenger motor vehicle rates on or before May 1, 1990. These rates shall apply to all policies issued or renewed on and after July 1, 1990.

(b) **Rate reductions.**—The rates charged by insurers under the filing required by subsection (a) shall be reduced from current rates as follows:

(1) For an insured electing the limited tort option under section 1705 (relating to election of tort options), the total premium charged for any selection of coverages and coverage limits shall be reduced by at least 22% from the total premium for the same selection of coverages and coverage limits in effect on December 1, 1989.

(2) For an insured bound by the full tort option under section 1705, the total premium charged for any selec-

---

1. Petitioners filed a motion to consolidate below which was granted and their cases remain consolidated on appeal here.

tion of coverages and coverage limits shall be reduced by at least 10% from the total premium for the same selection of coverages and coverage limits in effect on December 1, 1989.

(3) An insurer aggrieved by the rate reductions mandated by this subsection may seek relief from the commissioner, which relief may be granted when the commissioner deems necessary in extraordinary circumstances.

On May 1, 1990 Petitioners submitted to the Commissioner a filing under subsection (b)(3) of Section 1799.7 (extraordinary circumstances filing). Thereafter, the Deputy Insurance Commissioner, in a letter dated May 4, 1990, advised Petitioners that their extraordinary circumstances filing was "invalid" because they had not also filed rate filings under subsections (b)(1) and (b)(2). The Insurance Department contended that the (b)(1) and (b)(2) filings were a mandatory prerequisite to the relief available under a (b)(3) filing. Petitioners were informed that their failure to make the (b)(1) and (b)(2) filings also constituted a waiver of their right to seek (b)(3) relief. They were additionally informed, however, that when they did make their (b)(1) and (b)(2) filings they could then file a new extraordinary circumstances filing which would be considered. Finally, Petitioners were informed that *"your failure to comply with the filing requirements of the law does not relieve you of the obligation to issue and renew policies of insurance to be effective on or after July 1, 1990 at the rates mandated by Act 6."* (Emphasis in original.) Petitioners appealed to this Court from the May 4 letter and that appeal was quashed.

Thereafter, instead of making the (b)(1) and (b)(2) filings, Petitioners supplied to the Insurance Department forms pertinent to their (b)(3) filing. These forms were "disapproved" on May 17, 1990 because the extraordinary circumstances filing had never been approved.[2] On May 29, 1990,

---

**2.** Petitioners also filed, on May 15, 1990, an action in the U.S. District Court for the Middle District of Pennsylvania seeking a temporary restraining order attempting to enjoin the Insurance Department from

Petitioners requested a hearing before the Commissioner. A hearing was scheduled for June 25, 1990, then cancelled to allow the parties first to address the legal question, in briefs due June 22, 1990, of whether the (b)(1) and (b)(2) filings are a precondition to an Insurance Department review of an extraordinary circumstances filing. The legal memoranda were sought in light of conflicting opinions filed by single judges of this Court in cases arising under our original jurisdiction. Thereafter, on June 28, 1990 the Commissioner issued an opinion and order which are the subject of this appeal. In her opinion she astutely recognized that when faced with admittedly conflicting opinions of this Court she could not "pick and choose among opinions." She thus determined to stand by a statement of policy [3] published April 21, 1990 which states that (b)(1) and (b)(2) filings are mandatory prerequisites to a (b)(3) review. She thus dismissed Petitioners' request for review of its extraordinary circumstances filing. That same day she also denied Petitioners' petition for a stay of proceedings.

Also that same day, June 28, 1990, Petitioners filed with this Court their petition for review of the Commissioner's order and an "Application for Stay or Injunction Pending Review" which application was denied the following day by Senior Judge Lehman. His order specifically provided in pertinent part:

Petitioners shall submit a rate filing that complies with Sections 1799.7(b)(1) and (b)(2) of the Act of February 7, 1990, P.L. 11, 75 Pa.C.S. §§ 1799.7(b)(1) and (b)(2) (Act 6), with the respondent Commissioner within 20 days of this Court's Order. However, respondent Commissioner shall not act upon, rule, or otherwise attempt to institute a rate pursuant to Sections 1799.7(b)(1) and (b)(2) of the Act until respondent Commissioner has afforded petitioners a

commencing enforcement proceedings against them for failure to comply with Act 6 and attempting to prohibit the Insurance Department from requiring them to send out notices to their policyholders providing for rate reductions mandated by Act 6. Judge Sylvia H. Rambo denied Petitioners' motion on May 16, 1990.

**3.** This policy was codified at 31 Pa.Code § 68.201.

full hearing relating to its request for extraordinary circumstances relief pursuant to Section 1799.7(b)(3) of Act 6, 75 Pa.C.S. § 1799.7(b)(3).

Following the completion of the (b)(3) extraordinary circumstances hearing, the respondent Commissioner shall render its decision in accordance with Section 2005 of the Motor Vehicle Insurance Rate Review Procedures Act, 75 Pa.C.S. § 2005.

Pending disposition of the petitioners' (b)(3) extraordinary circumstances petition as outlined above, the petitioners' rates in effect and frozen as of December 1, 1989 pursuant to Section 1799.7(d) of Act 6, 75 Pa.C.S. 1799.7(d), shall remain in effect.

Thereafter, Petitioners filed with this Court a motion to modify our June 29, 1990 order. In that motion they sought approval to charge the rates requested in their May 1 extraordinary circumstances filing which provided for no reduction for full tort electors and a twelve percent reduction for limited tort electors. In response to that motion, Senior Judge Narick, on September 18, 1990, amended our June 29 order. His order reads, in pertinent part, as follows:

[T]he Insurance Commissioner will afford the Petitioners a full extraordinary circumstances hearing under Section 1799.7(b)(3) of the Act of February 7, 1990, P.L. 11, 75 Pa.C.S. § 1799.7(b)(3) (Act) and included therein is the issue of whether or not the Petitioners are entitled to deemed approval rates pursuant to the Act.

In all other respects the June 29, 1990 order is incorporated herein and made a part hereof. Further, the Insurance Commissioner shall conduct an extraordinary circumstances hearing in this matter in not more than twenty days from the date of this order and that the parties are to submit briefs to the Commissioner in not more than five days after the receipt of the transcript. Further, that the Commissioner is to render its decision in not more than fifteen days after the receipt of the briefs of the parties.

Further, the Petitioners shall be required to place in escrow funds sufficient to represent the difference between the rates of December 1, 1989 and the 10% reduction provided under Section 1799.7(b)(2).

We were advised at oral argument that a hearing pursuant to our September 18 order had already been held by the Department and post-hearing briefing was in process. The Commissioner contends that because Petitioners have had their extraordinary circumstances hearing their appeal here is now moot. At argument Petitioners maintained that the appeal is not moot because if we decide that the May 1 filing was a proper one since the Commissioner did not either request additional information regarding that filing or approve or disapprove it or schedule an administrative hearing within sixty days as required by Section 2003 of the Motor Vehicle Insurance Rate Review Procedures Act, (Rate Review Act) 75 Pa.C.S. § 2003,[4] the May 1 rate filings are deemed into effect. We agree that this "deemer issue" prevents the case from being moot and, accordingly, will proceed to examine the merits of Petitioners' appeal.

 Petitioners first argue that under Section 1799.7 the (b)(1) and (b)(2) filings are not a prerequisite to obtaining (b)(3) relief. We disagree. It is not even necessary to resort to principles of statutory construction because the literal language of the statute says in (b)(3) that "[a]n insurer aggrieved by the rate reductions mandated *by this subsection* may seek relief.... in extraordinary circumstances" (emphasis added). Thus, before relief may be sought the insurer must be aggrieved by the rate reductions mandated in (b)(1) and (b)(2). Rate reductions do not take effect until rate filings are made. Thus, as a matter of practicality and common sense there can be no aggrievement without an insurer first making a rate filing which triggers the rate reduction. Having concluded that the (b)(1) and (b)(2) filings are statutory prerequisites to obtaining (b)(3) relief, it logically follows that the procedure set forth in the Rate Review Act which mandates that the

**4.** This Section was added to the Law by Section 22 of Act 6.

Commissioner hold a hearing upon a request by an insurer "aggrieved" by an order of the Commissioner is not applicable to the case presented here. While Petitioners attempt to argue that they were aggrieved by the May 4 letter which advised them that they had "waived" their right to review, they take that statement out of context. The letter clearly states that Petitioners can resuscitate their (b)(3) request simply by making the (b)(1) and (b)(2) filings which filings we have just held are statutory preconditions to obtaining (b)(3) relief. Further, the requirement that Petitioners merely file the (b)(1) and (b)(2) rate reductions, a ministerial act, certainly does not constitute aggrievement.

██ It further logically follows from our determination that the (b)(1) and (b)(2) filings are prerequisite to (b)(3) relief that Petitioners are not entitled to have their May 1 filings deemed into effect because the Commissioner did not act upon them within sixty days, and because she did not seek a thirty day extension permitted under Section 2003. The Commissioner correctly concluded that the May 1 filings were invalid and, hence, the time limitation for the deemer provision was never triggered.

Further, our resolution of the statutory construction question means that little need be said about the Commissioner's statement of policy which Petitioners challenge here. Succinctly put, her position as put forth in her policy is in accordance with our reading of the statute and, thus, we uphold that portion of the policy.

Having disposed of the statutory arguments, we now turn to those constitutional issues asserted by Petitioners which we believe were properly raised and preserved for review. First, since pursuant to this Court's order a hearing on Petitioners' (b)(3) petition has been held, the claim that Petitioners were denied due process on their request for a (b)(3) hearing is now moot.

██ We then turn to the other constitutional questions. Petitioners maintain, and correctly so, that they are entitled to a fair and adequate rate of return, i.e., one which is not

confiscatory. *Keystone Water Co. v. Pennsylvania Public Utility Commission,* 19 Pa.Commonwealth Ct. 292, 339 A.2d 873 (1975), *affirmed by an evenly divided court,* 477 Pa. 594, 385 A.2d 946 (1978). They thus maintain that because their pre-Act 6 rates had not been determined to be excessive, inadequate or unfairly discriminatory they "had the right to issue or renew private passenger motor vehicle insurance policies at rates which had been established under [The Casualty and Surety Rate Regulatory Act][5]." We disagree. Petitioners have no property right to charge a specific rate *ad infinitum.* The situation here is distinguishable from *State Farm Mutual Automobile Insurance Co. v. Insurance Department,* 133 Pa.Commonwealth Ct. 644, 577 A.2d 951 (1990), where we held unconstitutional the legislature's attempt to alter rates *retroactively* after contracts had been entered into. The fact that Petitioners' pre-Act 6 rates had not been determined to be excessive does not mean that they were receiving the bare minimum of what could be termed a fair and adequate rate of return. It is certainly constitutional for the legislature to decide that future rates be reduced provided insurers continue to receive a fair rate of return[6] and the (b)(3) provision is the constitutional safety valve which will assure that Act 6 does not impact in a confiscatory manner upon particular insurers. Thus, we do not believe that Section 1799.7(b) has created an unconstitutional taking by implementing confiscatory rates. Further, because Petitioners have no property right in continuing to charge their pre-Act 6 rates, there is no denial of due process in the mandated rate reductions.[7]

5. Act of June 11, 1947 P.L. 538, *as amended,* 40 P.S. §§ 1181–1199.

6. To the extent that Section 3(d) of The Casualty and Surety Rate Regulatory Act, 40 P.S. § 1183(d), suggests that rates which are not excessive, inadequate or unfairly discriminatory cannot be altered, Section 1799.7, as a latter enacted statute, must be deemed to supersede it. *See* Section 1936 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1936.

7. It is axiomatic that for due process rights to attach there must first be a deprivation of a property right or other similar interest. *State Farm.* We also note that in addition to the limited tort option, which reduces the costs to insurance companies providing coverage, Petitioners receive other benefits from, *inter alia,* the legislation's anti-fraud

Petitioners next contend that the mandatory rate reduction procedure under Act 6, because it requires *all* carriers to reduce their rates by the same percentages rather than providing for hearings and individual rate reductions, violates equal protection. Thus, the class Petitioners designate in their equal protection claim is all insurance carriers. An equal protection claim, however, is based upon the notion of irrational disparate treatment among *different* classes. Therefore, we fail to see the logic of Petitioner's equal protection challenge.

Assuming, however, that the argument had a proper factual setting, the statute under attack, because it is one involving economic legislation and does not burden a suspect classification, must be examined in the context of equal protection under the rational relationship standard and the pertinent inquiry is whether the legislation has a rational relationship to a valid state objective. *Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107 (1983), *cert. denied,* 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 541 (1984). Legislation need not be mathematically precise to withstand a rational relationship scrutiny. *Martin.* A statute is presumed to be constitutional and those challenging it bear the burden of demonstrating that it clearly, plainly and palpably violates the constitution. *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302 (1984). In determining whether a classification is rational, a court is free to hypothesize the reasons the legislature may have had for its classifications. *Martin.* Neither record evidence nor legislative history is required in order for the court to uphold the law. *Id.* In the instant case the legislature certainly could have determined that an across-the-board reduction of rates was warranted considering the benefits insurers received in exchange for the mandatory reductions. *See supra* n. 7. It could further have deter-

provision, its "double dipping provision" and the cap on medical payments provision. There was thus a *quid pro quo* for the rate reductions.

mined that any company for whom the reductions would constitute a confiscatory rate level could avail itself of (b)(3) relief. Petitioners have thus not met their burden to prove that the statute is unconstitutional on equal protection grounds.

Petitioners also maintain that had they followed the Insurance Department's procedures they would have been the victim of at least a temporary unconstitutional taking because they still would have had to wait for a hearing on the (b)(3) filing after submitting their (b)(1) and (b)(2) filings. This allegation is speculative. Their May 1 filing was made two months before the new rates were to go into effect. Had they promptly complied with the Deputy Commissioner's May 4 letter there is no reason to suppose that their (b)(3) request could not have been heard and adjudicated within that two-month period. Rather than submit the mandatory filings, however, the Petitioners took every evasive action possible to avoid doing so including filing a federal court action, appealing the May 4 letter to this Court, and filing two ancillary petitions with this Court. If Petitioners are entitled to any (b)(3) relief and if it is long in coming, it would only be because of these dilatory tactics.

Finally, Petitioners contend that Section 1799.7(b)(3) constitutes an illegal delegation of legislative power. This issue, however, was not raised in their petition for review and is, therefore, not entitled to consideration. *Associated Town "N" Country Builders, Inc. v. Workmen's Compensation Appeal Board (Marabito)*, 95 Pa.Commonwealth Ct. 461, 505 A.2d 1358 (1986), *aff'd per curiam*, 515 Pa. 564, 531 A.2d 425 (1987).

Based upon the foregoing discussion, the order of the Commissioner is affirmed.

## ORDER

NOW, January 18, 1991, the order of the Insurance Commissioner in the above-captioned matter is hereby affirmed.