603 A.2d 713

**EAST ALLEGHENY SCHOOL DISTRICT, Petitioner,**

v.

**SECRETARY OF EDUCATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1991.

Decided Feb. 13, 1992.

478

480

Susan Evashavik, for petitioner.

Eleanor L. Bush, Asst. Counsel, for respondent.

Before McGINLEY and SMITH, JJ., and BARRY, Senior Judge.

McGINLEY, Judge.

East Allegheny School District (East Allegheny) petitions for review of a final order of the Secretary of Education, Donald M. Carroll, Jr. (Secretary), that affirmed and adopted the opinion and recommendations of the Bureau of Vocational and Adult Education (Bureau) that concluded that East Allegheny was in violation of provisions of the Public School Code of 1949 (School Code) [1] and regulations of the Department of Education (Department). The questions presented are (1) whether a school district that is a member of an area vocational and technical school (area vo-tech school) [2] may apply its own admissions policy at all times to students seeking to apply to the school; (2) whether a requirement of a "C" grade average before a student is permitted to apply to the area vo-tech school is proper; and (3) whether financial considerations may play a role in a local school district's choice of admissions criteria.

East Allegheny, along with other school districts in and around the eastern part of Allegheny County, entered into an agreement (Jointure Agreement) to form the Forbes Road East Joint Schools (Joint Schools) for the purpose of establishing schools and programs to provide technical and vocational education, among other forms of specialized education, to the students and citizens of their districts. The

1. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101 through 27–2702.

2. The School Code refers to such a school as an "area vocational-technical school." Section 1840.1, added by Section 2 of the Act of February 1, 1966, P.L. (1965) 1632, 24 P.S. § 18–1840.1.

members of the school boards of the participating school districts hold seats on the board of the Joint Schools. The Joint Schools operate the Forbes Road East Area Vocational and Technical School (AVTS). Operating costs for the Joint Schools are allocated among the participating member school districts based on the ratio of a school district's residents enrolled in the program to the total number of enrolled students. The Jointure Agreement establishes a quota system of pupils and assignments to courses for educational programs, and it provides further that if a participating school district does not fill its quota, then vacancies shall be distributed among the other school districts desiring to enroll students in the particular program. According to the most recent quota, East Allegheny is entitled to send forty-four students to the AVTS.

The AVTS has an established admissions policy, which provides that students will be selected for admission on the basis of their satisfaction of entrance requirements, interest in the field, and potential to succeed.[3] Under that policy, AVTS counselors are responsible for student recruitment, selection and admissions. However, the policy delegates to counselors in each participating school district the responsibility to counsel students expressing interest in a vocational-technical program. A school district counselor determines if the student is a reasonable selection and provides an application form. The ultimate authority to make a determination on an admission remains with the AVTS.

East Allegheny has adopted its own criteria for determining which students may apply to the AVTS, different from those in the admissions policy of the AVTS. East Allegheny does not provide an application form unless the student has maintained a "C" average, has demonstrated a 90%

---

**3.** Section 1850.1 of the School Code, added by Section 6 of the Act of February 1, 1966, P.L. (1965) 1632, 24 P.S. § 18–1850.1, relating to organization and operation of vocational schools and institutes, provides in part, "(b) The area vocational-technical board shall have authority and its duty shall be: ... (16) To adopt criteria for admitting students to area vocational-technical schools and technical institutes."

attendance pattern and is recommended by his or her guidance counselor. For the 1989–1990 school year, East Allegheny sent twenty students to the AVTS, but it did not permit twenty-three other students to apply, based on the application of its admissions criteria.

A student who was not permitted to apply complained to a state representative, who requested that the Executive Director of the State Board for Vocational Education investigate East Allegheny's policies regarding vocational education. The director referred the matter to the Bureau. The Bureau notified East Allegheny of a possible violation of regulations of the State Board of Education, and it conducted an investigation, which included requesting and examining admissions materials from East Allegheny and the AVTS.

In a letter from Jacqueline L. Cullen, Director of the Bureau, to Dr. Richard R. Napolitan (Dr. Napolitan), Superintendent of Schools of East Allegheny, dated February 9, 1990 (Bureau adjudication), the Bureau concluded (1) that the School Code and regulations of the Department do not permit East Allegheny to prevent its own students from applying to the AVTS when the total number of students seeking to apply is below East Allegheny's quota, and (2) that the requirement of a "C" average unfairly penalizes some students in violation of regulations relating to admissions.[4] The Bureau directed remedial action. East Allegheny appealed to the Secretary, and it requested a hearing. The Secretary issued an order in which he concluded that the appeal presented no factual disputes or issues, so he denied the request for a hearing, and he agreed with the analysis of the Bureau and adopted the Bureau adjudication as the findings and conclusions of the Department. East

---

**4.** The Bureau also concluded that East Allegheny's policy of permitting individual counselors to judge the aptitude of student applicants did not adequately ensure nondiscriminatory consideration of aptitude for particular programs; however, the Bureau concluded that East Allegheny had remedied the problem based on representations that it implemented appropriate forms of aptitude testing.

Allegheny has petitioned for review of the Secretary's order.[5]

■■■ Our scope of review of an order of the Secretary of Education is to determine whether there is a constitutional violation or an error of law and whether necessary findings of fact are supported by substantial evidence in the

5. In his brief, the Secretary asserts in a footnote that East Allegheny has waived an issue listed in the petition for review challenging the authority of the Secretary to enter his order without holding a hearing, in claimed violation of 2 Pa.C.S. § 504, which provides that no adjudication of an agency shall be valid as to any party unless the party has been afforded reasonable notice of a hearing and an opportunity to be heard. The Secretary cites East Allegheny's failure to comply with Pa. R.A.P. 2116(a), which requires that questions involved be stated in the "statement of questions involved" in the main brief and provides in part: "This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby," and East Allegheny's failure to present argument on the matter in its brief. In a reply brief East Allegheny asserts that it has not waived the issue, and it characterizes the Secretary's failure to provide a hearing as destroying the subject matter jurisdiction of this court to hear the appeal. It asserts that such a matter cannot be waived and may be raised at any time.

If the issue is waivable, East Allegheny has waived it. The appellate courts frequently have considered claims by petitioners that agency actions constituted adjudications of their rights that were improper because the agencies failed to provide hearings. In *O'Brien v. State Employes' Retirement System*, 503 Pa. 414, 469 A.2d 1008 (1984), our Supreme Court considered whether an action filed in mandamus in this court to compel an agency to hold a hearing was within this court's original or appellate jurisdiction. The court held:

> [A]n action to compel an administrative agency *which has finally denied a request for a hearing* to hold one is, as a matter of statutory interpretation, addressed to the appellate jurisdiction of Commonwealth Court under Section 763 of the Judicial Code [42 Pa.C.S. § 763], not an action 'originally' commenced in Commonwealth Court ....

*O'Brien*, 503 Pa. at 420, 469 A.2d at 1011 (emphasis added). A claim that an agency denied a petitioner's due process rights under Section 504 is within this court's appellate jurisdiction. A petitioner may raise and argue such a claim here, and the court has the power to order remedies, including a remand for a hearing, where appropriate. However, the mere raising of a claim of such a procedural error does not destroy the jurisdiction of the court over the subject matter, and the claim may be waived by failure to argue the point. That is what happened here. We shall grant the motion to strike the reply brief of East Allegheny insofar as the brief argues the waived issue of failure to provide a hearing.

record. *Botti v. Southwest Butler County School District*, 108 Pa. Commonwealth Ct. 538, 529 A.2d 1206 (1987). An administrative agency's interpretation of its own regulations is entitled to controlling weight unless clearly erroneous or inconsistent with the regulations or with the statute under which the regulations are promulgated. *Popple v. Department of Transportation*, 133 Pa.Commonwealth Ct. 375, 575 A.2d 973 (1990).

### General Application of Local District Admissions Policy

On the question of general application of local school district admissions criteria, the Bureau adjudication, adopted by the Secretary, emphasized that the School Code establishes a comprehensive framework to ensure that all students in the Commonwealth have *access* to vocational education. Section 1511 of the School Code, 24 P.S. § 15–1511, after specifying certain subjects to be taught in elementary grades, provides, "Other subjects shall be taught in the public elementary schools and also in the public high schools as may be prescribed by the standards of the State Board of Education." That body has adopted 22 Pa.Code § 5.4(c)(3), relating to offered courses in secondary grades: "The following planned courses *shall* be offered to all students enrolled in secondary grades: (i) Vocational Education ...." (Emphasis added.) The Bureau adjudication noted the intent of the School Code to ensure that *all* students have access to vocational education, as demonstrated by provisions for access to vocational training for students in non-public schools,[6] for students in schools that do not participate in an area vo-tech school,[7] and for students in districts that do not offer a particular type of training.[8] Under both of the latter sections no provision is made for initial screening by the student's own school district, and that district must pay for the attendance at the

6. Section 502 of the School Code, 24 P.S. § 5–502.
7. Section 1847 of the School Code, 24 P.S. § 18–1847.
8. Section 1809 of the School Code, 24 P.S. § 18–1809.

area vo-tech school. The Bureau found that it would be absurd to permit a school district that is a member of an area vo-tech school to limit access of its own students to vocational education, when no other school district may do so.

■ The regulation of the State Board of Education on which the Bureau principally relied, 22 Pa.Code § 6.31, "Admissions," in Chapter 6 "Vocational Education," provides:

(a) School districts and area vocational-technical schools administering vocational education programs shall have a written policy regarding admissions. Such policies shall insure that admittance to area vocational area vocational-technical schools, *where admissions must be limited,* shall be on a nondiscriminatory basis consistent with this chapter and shall be based upon, but not limited to, the following criteria:

(1) The aptitude of the student for the applicable vocational-technical program.

(2) Other factors to insure fair access of students to the vocational programs and *that do not unfairly penalize students who have not achieved high grades in academic subjects,* but who otherwise qualify for and are likely to succeed in the program.

(b) Course announcements, guidance materials, brochures and similar materials shall convey the philosophy of equal access to students considering enrollment in a vocational school.

(c) Policies regarding admissions shall be publicized. (Emphasis added.)

The Bureau interpreted Section 6.31 as permitting a school district in an area vo-tech school to apply its own admission criteria only when the number of its students interested in applying to the area vo-tech school exceeds that school district's quota. The Bureau concluded that the admissions policy involved here did not delegate general authority to East Allegheny to screen admissions first be-

cause, under Section 6.31, an area vo-tech school may delegate such authority only "where admissions must be limited ...."

■ Before the Bureau, East Allegheny argued that 22 Pa.Code § 339.21 supports its policy of applying its own admission criteria at all times. That section, contained in Chapter 339 "Vocational Education" of Part XVI of the State School Board regulations, relating to "Standards," provides in part:

An admissions policy developed by the *local education agency* regarding entrance to a vocational education program shall state whether enrollment is limited or unlimited. If enrollment is limited, an admissions policy shall include nondiscriminatory eligibility requirements for the purpose of predicting a student's success in a given program. When the number of students predicted to be successful in a given program is less than the number of openings available in that given program, the openings may be available to adults or students at another school district which are predicted to be successful in that program. When the number of students predicted to be successful in a given program exceeds the number of openings available, an admissions policy shall include a nondiscriminatory selection procedure, as required by current Federal and Commonwealth statutes regulations and guidelines.

(1) If a selection procedure is necessary to select and reject qualified applicants, as judged by established and publicized eligibility requirements, the procedure shall be nondiscriminatory under the Federal and Commonwealth statutes and regulations and guidelines. (Emphasis added.)

The Bureau adjudication states that to the extent that Section 339.21 may be inconsistent with Section 6.31, it is also inconsistent with the statutory scheme relating to access for all students to vocational education, and to that extent it must be disregarded.

On this appeal East Allegheny continues to argue that Sections 6.31 and 339.21 are not inconsistent, and that the latter permits a school district to apply its own criteria at all times. It contends that Section 1850.1 of the School Code, *supra* n. 3, neither prohibits nor enables the adoption by local school districts of admission policies of their own, but that other provisions of the Department's regulations do contemplate such policies.

In part, East Allegheny relies upon Section 6.31, which it misquotes slightly, but significantly, as stating, "The school districts *in* area vocational-technical schools administering vocational educational programs shall have a written policy regarding admissions." Brief for Appellant at 8 (emphasis added and deleted). As noted above, the section actually states, "School districts *and* area vocational-technical schools *administering vocational education programs* shall have a written policy regarding admissions." (Emphasis added.) Because some school districts provide such programs on their own, and others join together to form area vo-tech schools, we conclude that the emphasized participial phrase modifies both of the subjects of the sentence, i.e., "School districts administering such programs shall have a policy," and, "Area vo-tech schools administering such programs shall have a policy." Because a school district that has joined with others is, by definition, *not* administering a vocational education program directly, we conclude that this section is inapplicable to any individual school districts within an area vo-tech school. Therefore, Section 6.31 does not authorize such school districts to establish their own admissions policies. The fact that the section refers to "*a* written policy," rather than more than one, lends support to this interpretation.

East Allegheny asserts that Section 339.21 provides authority for the promulgation of its own admission policy and that the Bureau improperly disregarded this Section. It argues that the requirement of Section 339.21 that the local education agency state whether admission is unlimited or limited does not appear in conjunction with any reference to

filled or unfilled quotas. A vocational education program may have "limited" admissions at all times. If so, Section 339.21 requires a nondiscriminatory policy establishing general eligibility requirements. In line with its interpretation of Section 6.31, East Allegheny contends that Section 339.21 requires it to formulate its own admission policy to the AVTS that is applicable at all times, not just when the number of applicants exceeds the number of slots available under its quota. Further, East Allegheny asserts that the regulations do not contemplate totally "open" admissions under any circumstances, and it denies that the application of its own admission criteria violates the statutory mandate that all students have "access" to vocational education, noting that this does not mean that all students must be *admitted* to such programs.

The Secretary agrees that under the School Code and the regulations an admissions policy for an area vo-tech school must be in force at all times, but he disagrees that such a policy may be set by an individual school district. Concerning the relation between Sections 6.31 and 339.21, the Secretary advances an argument not fully within the text of the Bureau adjudication. The Secretary now argues that the two Sections are completely consistent so long as the term "local education agency" in Section 339.21 is interpreted to mean the area vo-tech school, which is the entity actually "administering vocational education programs" within the meaning of Section 6.31.[9] The Secretary

---

9. East Allegheny's reply brief also asserts that the Secretary's brief improperly presents a new theory for upholding the Secretary's order, but this court must base its decision upon the order itself and the arguments that have been preserved. This aspect of the reply brief is consistent with Pa. R.A.P. 2113(a), which provides that an appellant may file a brief in reply to matters raised by appellee's brief not previously raised by appellant's brief. The issue involved, as framed by East Allegheny, is whether a local school district has a right to apply its own admissions criteria at all times to students seeking entrance to an area vo-tech school. This question may be answered only by interpreting the relevant statutes and regulations. The Secretary presents a somewhat different *argument* as to why the regulations involved require the result reached by the Secretary, but he does not raise an entirely new *issue*. In addition, an appellate court has

asserts that nothing in Section 339.21 gives a school district that is a member of an area vo-tech school the right to make a "first cut" of any of its students who desire vocational education. To the extent that such a procedure prevents some students from even applying and finding out whether they meet the area vo-tech school's criteria, the procedure violates the statutory requirement that all students have access to vocational education. The Secretary continues to interpret the phrase "where admissions must be limited" in Section 6.31 as permitting a school district within an area vo-tech school to apply its own admissions criteria when the number of applicants is greater than the number of slots allotted to the district.

In our view the Secretary's interpretation of Sections 6.31 and 339.21 of its own regulations is not clearly erroneous and is in accordance with the overall scheme established by the School Code and the Department's regulations. Apart from East Allegheny's misreading of Section 6.31, there is nothing on the face of Section 339.21 to indicate that it applies to individual member school districts within an area vo-tech school.

 East Allegheny also contends that it is justified in applying its own policy because the AVTS has delegated to it the initial responsibility for selecting and screening students. It quotes from a document headed "STUDENT ADMISSIONS," which is included as part of Exhibit B attached to a letter from Dr. Napolitan to the Director of the Bureau, dated December 3, 1989:

The following procedures will be observed by Forbes Road East and the local school counselors in the selection and admission of students:

. . . .

the power to affirm the action below where an administrative agency assigns an erroneous reason to a correct decision and the record clearly shows the correct basis for that decision. *Kosciuszko v. Unemployment Compensation Board of Review,* 103 Pa.Commonwealth Ct. 589, 520 A.2d 1250 (1987).

2. Member district counselors will counsel with students expressing interest in a vocational-technical program. If selection is reasonable, the counselor will give an application form to the student.

Reproduced Record (R.R.) at 38. East Allegheny argues that its policy simply enforces its duty under the AVTS admission policy to determine whether selection of a particular candidate would be reasonable.

The Secretary acknowledges that the AVTS policy gives school district counselors responsibility for counseling students regarding vocational education. However, the Secretary notes that the AVTS policy cannot delegate greater power to an individual school district than what is allowed by law, i.e., the statutes and regulations discussed above. We agree. In addition, we note that the quoted document also bears a notation "Issued prior to 1978." The other part of the same Exhibit B is another document headed "STUDENT ADMISSIONS," which bears a notation "Current practice codified 1978." That document includes the following:

All persons residing in the state between the ages of six and 21 are entitled to a free education in the public schools. Forbes Road East AVTS, being an extension of the educational program of the participating school districts, extends this right to any student of the participating districts who qualifies, subject to quotas established for the districts by the jointure agreement.

. . . .

The recruitment and selection of students to attend Forbes Road East AVTS will be the responsibility of the administrative staff and counselors. Any new academic prerequisites, or changes in prerequisites, for admission to certain programs will require approval of this Board.

R.R. at 37. The later version of the AVTS admissions policy is entirely in agreement with the Secretary's position that it is the duty of the public education system to provide access to vocational and technical education and that it is the responsibility of the AVTS, rather than individual mem-

ber school districts, to establish generally applicable admissions criteria.

East Allegheny alleges that the AVTS has not enforced its own selection criteria since 1985. The Secretary correctly responds that an individual member school district cannot remedy any failure of the AVTS by assuming greater responsibility than is permitted to it by law. The Secretary notes further that East Allegheny participates in governing the AVTS, and it may raise concerns regarding its management with the other members of the joint board.

### *"C" Average Requirement*

■■■ Because the Secretary has concluded that East Allegheny may apply its own admission standards under some circumstances, we must go on to review the particular requirement invalidated by the Secretary's decision. As quoted above, 22 Pa.Code § 6.31(a)(2) requires that factors to be considered in determining admissions to vocational education programs "do not unfairly penalize students who have not achieved high grades in academic subjects." East Allegheny asserts that a "C" is not a high grade. Further, it describes its classification of all students among four "phases" according to levels of ability, so that a "C" in a lower-phase course is often the functional equivalent of an "F" in an upper-phase course. Counselors allegedly do not take this into account, so the evaluation conducted by East Allegheny does not unfairly penalize students.

The Secretary argues, as the Bureau adjudication held, that a student with less than a "C" average might well be "otherwise qualified for" and "likely to succeed" in a particular vocational program, so his or her rejection on this basis violates Section 6.31(a)(2). He notes that the grade average employed by East Allegheny is derived from all courses, including purely academic ones, such as history, which have little or no relation to a student's likelihood to succeed in, for example, a welding program. He notes further that East Allegheny's argument concerning phases is unsound and fails to account for the rejection of an applicant from a

higher phase with lower than a "C" average, when that person's achievement might really be higher than that of a person from a lower phase with a "C" average. The Secretary asserts that the requirement bears no apparent relationship to the AVTS admissions policy requirements: "Students will be selected on the basis of their satisfaction of entrance requirements, interest in the field and potential to succeed." STUDENT ADMISSIONS, Prior to 1978, *supra*.

■ Again, we conclude that the Secretary's interpretation of Section 6.31 is certainly not clearly erroneous and inconsistent. The thrust of Section 6.31(a)(2) appears to be precisely to prevent the kind of arbitrary imposition of a particular grade average such as that in East Allegheny's policy. Performance in academic classes doubtless has some value in predicting the likelihood of success in vocational education programs, and its value probably varies as to different programs. However, Section 6.31(a)(2) prohibits its use as the *only* factor, which is the effect of East Allegheny's policy. In addition, the phrase "students who have not achieved high grades in academic subjects" encompasses students who have achieved very low grades. By preventing such students from applying to the AVTS, East Allegheny precludes them from attempting to demonstrate in the application process their likelihood to succeed, thereby penalizing them. The Secretary did not err in invalidating the "C" average requirement.

### Financial Considerations

■ Finally, East Allegheny argues that financial considerations are relevant to the issues before the court. It asserts that the cost of sending a student to the AVTS is over $7,000 per year. If all students were admitted regardless of credentials, then a student with poor aptitude, bad grades and poor attendance may attend, contrary to the spirit of the regulations, which speak toward "success." If the number of applicants continued at the same rate as in 1989, East Allegheny could be compelled to spend over

$150,000 on such students, which would result in a tax increase or a cutback of services to other students.

The Bureau adjudication held that financial considerations cannot affect the legality of East Allegheny's admissions policy. It noted further that East Allegheny is not required to exceed its quota and that applicants may be rejected based on the AVTS's admissions criteria even though East Allegheny's quota is not filled. In his brief the Secretary repeats these arguments. He notes further that East Allegheny's quota sets a limit on its financial exposure, and that East Allegheny has the opportunity to work within the AVTS to attempt to reduce its expenses or to reduce the number of enrollments.

In summary, the School Code provides that the State Board of Education shall specify subjects of instruction for student in secondary grades, and that body has mandated that schools offer vocational training, among other courses. 22 Pa.Code § 5.4(c)(3). Under the regulations, a school district may not decide to offer Biology, Chemistry and Physics (subjects also covered by § 5.4(c)(3)) to only half of its student body on the basis of "financial considerations." Similarly, a school district may not decline to offer vocational education to all students on that basis, nor may it impose its own admissions criteria for the purpose of limiting the number of students who may apply to a vocational education program.

The order of the Secretary of Education is affirmed.

ORDER

AND NOW, this 13th day of February, 1992, the motion of Department of Education to strike the reply brief of East Allegheny School District is granted as to the portion of that brief that argues a claimed violation of 2 Pa.C.S. § 504. The order of the Secretary of Education dated August 16, 1990, is affirmed.