John A. CORRELL, Jr. and Sharyn Correll, individually and as parents and natural guardians of Chad M. Correll, Appellants,

v.

MILLVILLE AREA SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued June 20, 1995.

Decided July 20, 1995.

**697**

Gary E. Norton, for appellants.

Elwood R. Harding, Jr., for appellee.

Before PELLEGRINI, FRIEDMAN and NEWMAN, JJ.

PELLEGRINI, Judge.

John A. and Sharyn Correll (Corrells), as parents of Chad M. Correll as well as assignees of any claims of the Danville Area School District (Danville), appeal from an Order of the Columbia County Court of Common Pleas, granting Millville Area School District's (Millville) motion for summary judgment and dismissing the Corrells' action for payment of Chad Correll's tuition at Danville.

Chad Correll, an about-to-be high school freshman residing in the Millville school district, wanted to take a specific program in Vocational Agriculture Production (Vo–Ag). While Columbia–Montour Vocational School, a vocational school serving the Millville district, offered a Vocational Horticulture [1] program that was similar to Vo–Ag and had many of the same courses, it did not offer a Vo–Ag program. However, Danville, an adjacent district, offered a Vo–Ag program through Danville Area High School. In May of 1989, the Corrells wrote to Millville's superintendent and requested that Millville pay Chad's tuition at Danville for the Vo–Ag program, but that request was denied.

Pursuant to the Corrells' request that Millville pay Chad's tuition at Danville, Millville's legal counsel advised the Millville superintendent that the district *may* pay Chad's tuition at Danville, but was under no obligation to do so. The Millville superintendent inquired as to Danville's Vo–Ag Program and Danville's superintendent wrote to Millville on June 6, 1989, explaining that Danville's Vo–Ag program was offered at Danville Area High School—not at a separate vocational school. On June 16, 1989, Millville wrote to Danville, requesting Danville to notify them as to Chad's status, specifically whether Chad was admitted to Danville pursuant to § 1809 of the Public School Code.[2] Danville, by letter

---

**1.** The vocational program in *Agricultural Production* (Code 01.0301) is defined as an instructional program that prepares individuals to apply scientific knowledge and methods in the planning related to an economical use of facilities, land, water, machinery, chemicals, finance, and labor in the production of plant and animal products. Activities include classroom instruction, agricultural mechanics instruction, and laboratory experiences in and out of school, including farms, agribusinesses, and other agriculturally related establishments. The vocational program in *Horticulture* (Code 01.0601) is defined as organized subject matter and practical experiences concerned with the instructional program that pre-

pares individuals to produce, process, and market plants, shrubs, and trees used principally for ornamental or aesthetic purposes. Instruction emphasizes knowledge and understanding important to establishing, maintaining, and managing horticultural enterprises such as aboriculture, floriculture, greenhouse operation and management, landscaping, nursery operation and management, and turf management.

**2.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702. Section 1809 of the Public School Code states as follows:

(a) Any resident of any school district which does not maintain an approved ... vocational

dated June 26, 1989, informed Millville that, as of that date, Danville had received no formal request for Chad's admission.

The Corrells wrote to the Director of the State Board of Education, Mr. Robert Feir, regarding the vocational education available to Chad. Mr. Feir responded to the Corrells by a letter in October of 1989, advising them that they had no right to a § 1809 appeal because appeals to the State Board of Vocational Education pursuant to § 1809 of the Public School Code were available only to students denied admission by the non-resident school. Since Chad had been admitted to Danville, in Mr. Feir's opinion, the issue was moot.[3]

The Corrells then made a request of the Danville School Board that Chad be admitted to Danville for the 1989–90 school year as a ninth grader on a "tuition basis" to enroll in

agricultural ... education day, part-time, or evening class, school or department, offering the type of training which he desires, may make application to the board of school directors of any other district for admission to such school or department maintained by said board. If the board refuses him admission, he may apply to the State Board for Vocational Education for admission to such school or department. The State Board for Vocational Education may approve or disapprove such application. In making such decision the State Board for Vocational Education shall take into consideration the opportunities for free vocational training in the community in which the applicant resides, the financial status of the community, the age, preparation, aptitude, and previous record of the applicant, and all other relevant circumstances. The decision of the State Board for Vocational Education shall be final.

    \*     \*     \*     \*     \*

(c) The school district in which the person resides, who has been admitted, as above provided, to an approved ... vocational agricultural ... school or department maintained by another school district, shall pay the high school charge provided for by this act. If any school district neglects or refuses to pay for such tuition, it shall be liable therefor, in an action of contract, to the school district or school districts maintaining the school which the pupil, with the approval of the board, attended.

24 P.S. § 18–1809(a), (c).

3. The Corrells had previously telephoned the Department of Education in June of 1989, concerning Millville's obligation to pay Chad's tuition at Danville. Responding by letter dated July 11, 1989, the Chief of Vocational Field Services, Mr.

the "Vocational Agriculture course in addition to the College Prep program." Nothing in the Corrells' request to Danville mentioned that Chad's admission was pursuant to § 1809 or that admission was being requested because Millville did not offer a Vo–Ag program. The Danville school board voted to accept Chad as a tuition student and Chad began high school at Danville in the fall of 1989. At the conclusion of each of the three subsequent school years, the Corrells wrote to the Danville school board, requesting continued admission for Chad at Danville.[4] The Danville school board approved Chad's admission as a "tuition student" each of the three subsequent years.

The Corrells also wrote annually to Millville, requesting that they pay Chad's tuition at Danville, which requests Millville annually rejected.[5] The Corrells paid Chad's tuition

Lane Kemler, noted that, under § 1809 of the Public School Code, a student could pursue a vocational program not offered within the home school district at a non-resident school district, and that the home school district would be responsible for tuition. He also informed the Corrells that they possessed the right to appeal to the State Board of Vocational Education (Board) and advised them of his belief that the Board would recommend that Chad pursue the vocational horticulture program offered within Millville's district.

4. The Corrells repeated the same process through letters in the summers of 1990, 1991 and 1992. In their letter dated August 9, 1990, the Corrells requested Chad's continued admission as a "tuition student." By letter dated June 26, 1991, the Corrells requested Chad's continued admission as a "non-resident in the Vocational Agriculture Program." And, by letter dated July 29, 1992, the Corrells requested that Chad be permitted to continue to "attend the Vocational Agriculture Program." Nothing in any of these letter requests that Chad's continued admission be pursuant to § 1809 of the Public School Code, nor is there any reference to the fact that the Vo–Ag program was not offered at Millville. In February of 1990, the Corrells wrote to Danville, requesting that they waive Chad's tuition for the 1990 school year as a professional courtesy to Mrs. Correll because she was employed at Danville as a guidance counselor. This is the only letter to Danville in which the Corrells state that Millville offered no suitable Vo–Ag program within its district. This request was denied.

5. By letter dated April 2, 1990, the Corrells wrote to Millville, requesting they pay tuition and transportation costs for Chad's attendance at

in full to Danville, until the 1992–1993 school year, when they were advised by Danville's solicitor to put the tuition money in a special account, pending the determination of whether Millville had any obligation to pay Chad's tuition.

In January of 1993 Danville assigned to the Corrells all rights in contract for tuition reimbursement against Millville pursuant to § 1809(c) of the Public School Code. In February of 1993, the Corrells filed a complaint against Millville, both on their own behalf and as assignees of Danville, alleging that Millville owed them reimbursement for tuition pursuant to § 1809 of the Public School Code. The complaint also contained a claim based on unjust enrichment/quasi-contract. Millville answered, alleging that Chad Correll was accepted at Danville as a tuition paying student, not pursuant to § 1809 of the Public School Code; Danville never notified Millville of Chad's acceptance as a § 1809

student, nor did Danville ever submit tuition bills to Millville.

■ Both Millville and the Corrells made motions for summary judgment. Denying the Corrells' motion for summary judgment, and granting Millville's motion for summary judgment, the trial court found that Chad's application for admission to Danville was as a tuition paying student. The trial court also held that any claim of a § 1809 admission had been waived by Chad's admission to Danville as a "tuition student" and by the inaction of the Corrells to prove otherwise. Finally, the trial court held that, by failing to file an appeal with the State Board of Vocational Education, the Corrells failed to exhaust their administrative remedies. The Corrells then took this appeal.[6]

Though both the Corrells[7] and Millville[8] present several compounded issues in their briefs, the central issue presented for our

Danville, citing Millville's lack of a Vocational Agriculture program as their basis for Chad's attendance out of the district. By letter dated April 22, 1991, the Corrells wrote to Millville requesting that Millville pay tuition for Chad to attend the Vocational Agriculture program at Danville, and if denied, requesting that Chad be re-enrolled in Millville so that the district could receive reimbursement, as neither district was currently receiving compensation. On August 31, 1992, the Corrells wrote to Millville, again requesting Chad's tuition and transportation be paid to Danville. This is the only letter to Millville in which the Corrells specifically requested payment of Chad's tuition pursuant to § 1809 of the Public School Code, and informed Millville that they intended to take action to receive reimbursement for Chad's 9th, 10th, and 11th grade tuition as well.

**6.** Our scope of review of the grant of a summary judgment is limited to a determination of whether an error of law has been committed or an abuse of discretion has occurred. *Rankin v. SEPTA*, 146 Pa.Commonwealth Ct. 429, 606 A.2d 536 (1992). Summary judgment should be granted only where the movant's right to relief is clear and free from doubt, as shown through the pleadings, answers to interrogatories, depositions, affidavits, and admissions. Pa.R.C.P. No. 1035(a); *Id.* at 433, 606 A.2d 536.

**7.** The Corrells allege that the trial court erred as a matter of law because it lacked substantial evidence upon which to base its findings that: (1) the Corrells waived or abandoned their rights under 24 P.S. § 18–1809, (2) the Corrells did not exhaust their appeal rights to the State Board of

Vocational Education, (3) Chad's admission as a "tuition paying student" precluded the application of § 18–1809, (4) the same factual scenario was repeated yearly by all parties involved, (5) appellants paid Chad's tuition for the 1992–1993 school year, and (6) the defenses of Millville were viable. The Corrells further allege that they exhausted the appeal available to them under § 1809(a) by writing to Mr. Robert Feir, director of the State Board of Vocational Education. Finally, the Corrells assert that the trial court erred as a matter of law in failing to grant their own motion for summary judgment because the undisputed material facts of record establish that there exists a quasi-contractual relationship between themselves and Millville.

**8.** As before this court, Millville also contended that (1) they have no tuition reimbursement obligation under § 1809 because that section is unconstitutional as it denies the resident district procedural due process (2) the Corrells assert rights under an invalid assignment that is an *ultra vires* act with no legal effect, and (3) even if the assignment were valid, the Corrells' claim must fail because Millville received no legal benefit under the unjust enrichment/quasi-contract theory of recovery. Even had there been a valid assignment, Millville argues, the Corrells are subject to the rights and defenses available to Danville, who is owed nothing since the tuition has been paid by the Corrells. Finally, Millville contends that the Corrells did not exhaust their administrative appeal available under § 1809(a) by merely writing to Mr. Robert Feir, Director of the State Board of Vocational Education. Because of the way we resolved this case, we need not reach any of those issues.

consideration is whether Chad's admission to Danville falls within § 1809 of the Public School Code, thus subjecting Millville to liability for tuition reimbursement. The Corrells maintain that everyone in the process was fully aware of the fact that Millville did not have a Vo–Ag program and that their requests for tuition payment were under § 1809. Moreover, they argue, by writing letters to Millville annually in which they requested payment of Chad's tuition at Danville, they have clearly demonstrated their intent that Millville be responsible for Chad's tuition under § 1809(c) and never waived or abandoned that position.

The admission of a student to a non-resident public school district can only be made pursuant to one of two sections of the Public School Code—§ 1809 or § 1608. Section 1809 allows a student to go to another district where there exists no approved vocational program in the resident district, or where a student desires to enroll in a particular vocational program not offered within the resident district. Under this provision, the student makes application to the admitting school district and it is the admitting school that determines whether § 1809 admission should be granted. Once the admitting school grants § 1809 admission, § 1809(c) requires that the resident district pay the student's tuition at the admitting school.

The other method by which a student can gain admission to a public school outside of his resident district is as a tuition paying student. Section 1608 of the Public School Code states as follows:

Pupils wishing to attend a high school in a district other than the district in which they reside shall obtain the consent of the board of school directors of the district or joint school of the area in which such high school is located before attending the same. Pupils desirous of having their tuition paid in a high school in another district shall secure written approval from the school board in the district or joint board in the district or joint board of the area of which they are residents. The board of school directors of the district in which any such student resides may enter into a writ-

ten agreement with the receiving district for the attendance and tuition of the pupil. 24 P.S. § 16–1608.

According to this section, a student wishing to attend a non-resident high school may apply for admission to the non-resident school board. A student admitted under this section may request that his resident district pay his tuition at the non-resident school, but payment under this section is at the discretion of the resident school board and is not required.

■ Under § 1809 of the Public School Code, Danville was required to make a determination of Chad's eligibility. It was Danville who had the obligation to make admission pursuant to § 1809 in order to secure a right to receive tuition payment from the resident school district. Danville made no § 1809 eligibility determination, no § 1809 admission, and at no time attempted to pursue reimbursement from Millville under § 1809(c). Without these determinations being made, Millville is under no obligation to reimburse Danville for Chad's tuition.

In *Bethlehem Area Vo–Tech v. Palisades School District,* 156 Pa.Commonwealth Ct. 120, 124, 625 A.2d 1330 (1993), we considered the application of § 1809 of the School Code where a group of students attended a non-resident vocational school without approval from their resident district, and the non-resident district sought tuition and transportation reimbursement. We held that, unless the determination was made by the admitting school district that the non-resident student had fulfilled the eligibility requirements of § 1809, that district could not claim reimbursement from the home district. *Id.* at 124. Because Danville, the admitting school in the instant matter, never made a determination as to whether Chad was eligible under § 1809 for admission, there is no obligation on the part of Millville to reimburse Danville for Chad's tuition.

Contrary to the Corrells' contentions, nothing they did gave any notice to Danville that they were seeking to admit Chad under § 1809. The Corrells, in no request, mentioned that Chad's application was pursuant to § 1809, nor did they request that Danville

seek tuition reimbursement from Millville. To the contrary, the Corrells specifically requested Chad be admitted to Danville on a "tuition basis." The Corrells agreed to be solely responsible for the payment of Chad's tuition at Danville, they were billed for such tuition, and they paid accordingly without objection. The facts support the trial court's conclusion that Danville admitted Chad on a "tuition basis" pursuant to § 1608 of the Public School Code.

■■■ The Corrells also contend that Millville was unjustly enriched because it received the benefit of their tuition payment to Danville.[9] The payment of Chad's tuition at Danville by the Corrells does not satisfy the elements of unjust enrichment because it confers no benefit upon Millville. Millville had no obligation to pay Chad's tuition and because it had no obligation, no benefit could be conferred upon it simply because the Corrells paid the tuition. Moreover, the trial court's finding that Chad was a tuition paying student makes the concept inapplicable.

Accordingly, the trial court's grant of summary judgment to Millville, that it had no obligation to reimburse Danville or the Corrells for Chad's tuition, is affirmed.

### ORDER

AND NOW, this 20th day of July, 1995, the order of the Court of Common Pleas of Columbia County, No. 296 of 1993, is affirmed.

9. In order to establish that a party has been unjustly enriched, three elements must be fulfilled. (1) A benefit must be conferred upon the defendant by the plaintiff, (2) the defendant must appreciate or have knowledge of the benefit, and (3) the acceptance or retention of the benefit by the defendant must be under such circumstances to make its retention inequitable. *Styer v. Hugo*, 422 Pa. Superior Ct. 262, 619 A.2d 347 (1993), *appeal granted*, 535 Pa. 638, 631 A.2d 1009 (1993), *affirmed*, 535 Pa. 610, 637 A.2d 276 (1994).