# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hazleton Area School District, :
               Petitioner :
                : No. 757 C.D. 2019
      v. :
                : Submitted: May 11, 2020
Central Columbia School District, :
               Respondent :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE J. ANDREW CROMPTON, Judge


OPINION BY
JUDGE McCULLOUGH                       FILED: June 19, 2020


Hazleton Area School District petitions for review of the May 20, 2019 and June 6, 2019 orders of the Secretary of Education (Secretary) which directed Hazleton Area School District to pay full tuition to Central Columbia School District for student DL's attendance at Central Columbia High School.


## Factual Background

DL is a high school student who resides in the Hazleton Area School District. (Findings of Fact (F.F.) No. 1.) DL finished 8th Grade in the Hazleton Area School District at the end of the 2016-2017 school year. (F.F. No. 2.) In June 2017, DL's parents filed paperwork withdrawing DL from the Hazleton Area School District and enrolling him in Marion Catholic, a private school. (F.F. No. 3.) However, DL did not actually begin at Marion Catholic or attend any classes there. *Id.*

In July 2017, DL and his parents visited Central Columbia High School, met with counselors and instructors of the Agricultural Mechanization program, and prior to leaving that day, filled out an application for admission into Central Columbia High School's Agricultural Mechanization program as a nonresident student. (F.F. No. 5; *see also* Notes of Testimony, February 28, 2019 (N.T.) at 16.) The Agricultural Mechanization program at Central Columbia High School is a 1300-plus hour program, and requires a minimum of two classes per year. (N.T. at 25.) Central Columbia's Agricultural Mechanization program was approved by the Pennsylvania Department of Education. (N.T. at 11-14.)

Central Columbia School District informed DL and his parents that in order for DL to attend the Agricultural Mechanization program at Central Columbia High School, he had to be enrolled in a Pennsylvania public school, not a private school. (N.T. at 19-20, 28-9.) So, in August 2017, DL withdrew enrollment from Marion Catholic and re-enrolled in the Hazleton Area School District.[1] (F.F. No. 3.)

In September 2017, after confirming that (1) Hazleton Area School District did not offer its students an Agricultural Mechanization program, and (2) DL was enrolled in the Hazleton Area School District, Central Columbia School District's School Board voted to admit DL into its Agricultural Mechanization program. (F.F. No. 6.)

Central Columbia School District contacted Hazleton Area School District numerous times to ask whether Hazleton intended to pay DL's full-time attendance at Central Columbia or whether it intended to provide the non-vocational

---

[1] Notwithstanding his re-enrollment in Hazleton Area High School, DL did not actually attend any classes there after reenrolling. (F.F. No. 4.)

component of DL's education and transportation of DL back and forth for his vocational classes.[2] (N.T. at 21.) The distance between the two high schools is 25 miles and takes 33 minutes to travel. (N.T. at 25.) Hazleton did not respond to the inquiry. (N.T. at 47.) Central Columbia determined it was not feasible for DL to commute to and from Hazleton Area High School twice per day to attend his Agricultural Mechanization classes at Central Columbia. Due to Hazleton's lack of communication and looking out for the best interests of DL, Central Columbia allowed DL to enroll at its high school full-time. (N.T. at 73.)

During the 2017-2018 and 2018-2019 school years, DL attended school at Central Columbia High School, full-time, as a nonresident student. (F.F. No. 4.) DL's program of studies in Central Columbia School District included an approved vocational program in Agricultural Mechanization (career classes) and non-vocational (academic) classes. *Id.*

Central Columbia School District sent multiple invoices to Hazleton Area School District, seeking tuition payments for DL's full-time attendance at its high school. Hazleton Area School District refused to pay for DL's full tuition. The amount of tuition is established by the Department of Education, not the local school districts. (N.T. at 34.) In this case, the cost of DL's tuition was determined to be $59.38 per day or $11,400 per year. *Id.*

On March 8, 2019, Central Columbia School District filed an application with the Secretary seeking reimbursement for DL's full tuition for his freshman and sophomore years, and a hearing in the matter was held before the Secretary's appointed hearing officer on February 28, 2019. After the hearing, the Secretary issued an

_____

[2] With the exception of the Agricultural Mechanization classes, DL's non-vocational classes (Algebra, American History, Composition, Music Appreciation, Physical Education, Physical Science, and Spanish) were available at Hazleton Area High School.

3

opinion and order on May 20, 2019. On June 6, 2019, the Secretary issued a second opinion, clarifying that Hazleton Area School District must reimburse Central Columbia School District for DL's full tuition as a full-time student – not only the vocational classes.

In support, the Secretary relied on section 1847 of the Public School Code of 1949 (School Code),[3] which provides:

> On obtaining the consent of the area vocational-technical board operating an area vocational-technical school or technical institute, and with or without the consent of the board of school directors of the district in which the pupil resides, any pupil residing in a nonparticipating district may attend the area vocational-technical school or technical institute. The school district in which the pupil resides shall be charged, for each pupil attending the area vocational-technical school or technical institute, an amount equal to the total approved budget for current expenses, debt service and capital outlay divided by the number of pupils enrolled in the school.

24 P.S. §18-1847.

The Secretary held that "where a school district board of directors: (1) operates a vocational program in its school district that is unavailable to a nonresident student in his or her resident school district and (2) legally approves that nonresident student to attend the vocational program in its school district, the resident school district shall be charged tuition by the nonresident school district in accordance with Section []1847." (Secretary Opinion and Order, May 20, 2019, at 4.) The Secretary concluded that Central Columbia "approved DL to attend one of its vocational

---

[3] Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of August 21, 1953, P.L. 1223, 24 P.S. §18-1847.

programs that Hazleton Area School District did not offer and properly charged tuition to Hazleton, the resident school district." *Id.*

The Secretary further concluded that his decision was also supported by section 2562 of the School Code which provides:

> For each elementary or high school pupil attending a public school of another district, the receiving district shall bill the sending district, and the sending district shall pay the amount of the tuition charge per elementary pupil, or the tuition charge per high school pupil, as the case may be.

24 P.S. §25-2562.

The Secretary explained: "DL legally attended a 'receiving district' -- [Central Columbia School District]. Accordingly, pursuant to Section 2562, [Hazleton Area School District] -- the 'sending district'-- must pay the tuition amount charged for this student." (Secretary Opinion and Order, May 20, 2019, at 5.)

On appeal,[4] Hazleton Area School District argues that the Central Columbia School District High School is not a "vocational-technical school or technical institute" and therefore, it is not entitled to tuition reimbursement as contemplated in section 1847 of the School Code. Hazleton argues that, based on rules of statutory interpretation, the wording of section 1847 of the School Code establishes that the legislature intended that only "vocational-technical schools or technical institutes" be reimbursed. Hazleton asserts that Central Columbia School District's interpretation of this section ignores the words "vocational-technical school or

---

[4] Our scope of review of an order of the Secretary of Education is to determine whether there is a constitutional violation or an error of law and whether necessary findings of fact were supported by substantial evidence in the record. *Botti v. Southwest Butler County School District*, 529 A.2d 1206 (Pa. Cmwlth. 1987).

technical institute" in the statute. Hazleton contends that DL's attendance at Central Columbia High School was never approved by an "area vocational-technical board operating an area vocational-technical school or technical institute" as required by section 1847. Rather, Hazleton contends his attendance was approved by a local school district's school board and, therefore, section 1847 of the School Code does not apply.[5]

Alternatively, Hazleton argues that the majority of the classes taken by DL were general educational classes that were available to DL at Hazleton Area High School. Hazleton argues that to the extent this Court concludes that Central Columbia is entitled to tuition reimbursement, it should only be reimbursed for DL's Agricultural Mechanization classes. Hazleton argues that DL's attendance at Central Columbia High School on a full-time basis was only for DL's convenience and/or the convenience of Central Columbia. Citing *Ferndale Area School District v. Shawley,* 313 A.2d 366 (Pa. Cmwlth. 1973), Hazleton contends that a long-standing principle of public education law is that a student must attend classes in his resident school district and that mere convenience does not justify full-time reimbursement.

Central Columbia School District responds that it is entitled to reimbursement of DL's full tuition at the rate of $59.38 per day from August 24, 2017, through the end of the 2017-18 academic year ($21,376.80) plus additional tuition for the 2018-19 academic year. It contends that even though DL is enrolled full-time at its high school, he still resides within the Hazleton Area School District's region, therefore, Hazleton is his district of residence.

Central Columbia further argues that the School Code allows for school districts to establish and maintain vocational/industrial, vocational/agricultural, vocational/homemaking and vocational/distributive occupational schools or

---

[5] Hazleton does not address the Secretary's application of section 2562 of the School Code, 24 P.S. §25-2562, in its Brief.

departments. Section 1806(1) of the School Code, 24 P.S. §18-1806(1). Once these schools and/or departments are established by a school district, students from other school districts are allowed to attend if their home school district does not maintain such a program. Section 1809(a) of the School Code, 24 P.S. §18-1809(a). Once a student is admitted into these programs, the school district where the student resides "<u>shall</u> pay the high school charge provided for by this act. If any school district neglects or refuses to pay for such tuition, it shall be liable therefor, in an action of contract, to the school district or school districts maintaining the school which the pupil, with the approval of the board, attended." Section 1809(c) of the School Code, 24 P.S. §18-1809(c) (emphasis added).

Additionally, Central Columbia argues that its High School should be considered to be a "vocational school" for purposes of obtaining reimbursement. It asserts that section 1847 of the School Code, 24 P.S. §18-1847, permits students to attend vocational programs offered by neighboring school districts when their home district fails to participate in the vocational training through a Career and Technical Education Center. It contends that Hazleton's argument that Central Columbia High School is not a "vocational school" for purposes of section 1847 of the School Code, 24 P.S. §18-1847, must fail. It contends that the School Code recognizes these schools or departments established or maintained as vocational industrial, vocational agricultural, vocational homemaking and vocational distributive occupational schools or departments as approved local or joint vocational schools. Section 1810 of the School Code, 24 P.S. §18-1810. It argues that, therefore, Central Columbia High School should be recognized as a "vocational school" under section 1847 of the School Code, 24 P.S. §18-1847.

7

Central Columbia argues that it is also entitled to tuition from Hazleton Area School District for the non-vocational classes DL attended at Central Columbia High School. Section 2562 of the School Code, 24 P.S. §25-2562, states in relevant part that for each "high school pupil attending a public school of another district, the receiving district shall bill the sending district, and the sending district shall pay the amount of the tuition charge . . . ." Central Columbia argues that the outcome could have been different had Hazleton addressed the transportation issue. Hazleton could have transported DL to and from Central Columbia in which case, Central Columbia would have billed Hazleton per hour of instruction.

## Discussion

Generally, a student must attend the school in the district where his/her parents reside. 22 Pa. Code §11.11; *Ferndale*. However, the School Code has established a comprehensive framework to ensure that all students in the Commonwealth have access to a vocational education. *East Allegheny School District v. Secretary of Education*, 603 A.2d 713, 718 (Pa. Cmwlth. 1992).

Article XVIII of the School Code is entitled "Career and Technical Education." Article XVIII is broken down into two subarticles: (a) "School Districts" and (c) "Area Career and Technical School Districts."[6] As this Court explained in *East Allegheny*, "some school districts provide [Vo-tech] programs on their own [referring to subarticle (a)], and others join together to form area Vo-tech schools [referring to subarticle (c)]." 603 A.2d at 719.

Here, the Secretary relied on section 1847 (which appears in subarticle (c)) to order Hazleton to reimburse Central Columbia for DL's tuition. Section 1847, however, details the requirements for the establishment and operation of <u>area</u>

---

[6] Subarticle (b) was repealed by the Act of July 13, 1957, P.L. 898.

vocational-technical schools.  *See Wilkes-Barre Area Vocational School v. Greater Nanticoke Area School District*, 539 A.2d 902, 905 n.3 (Pa. Cmwlth. 1988).  Pursuant to the provisions of subarticle (c), school districts may elect to participate in the establishment and operation of an <u>area vocational-technical school or technical institute</u> to provide technical and vocational classes to the students and citizens <u>in their attendance area</u>.  24 P.S. §18-1844.   A school district that has joined with others to form an <u>area vocational-technical school or technical institute</u> is referred to throughout subarticle (c) as a "participating school district."   All expenses in connection with the establishment of an <u>area vocational-technical school or technical institute</u> and the improvements thereof are borne by the "participating school districts."   Section 1845 of the School Code, 24 P.S. §18-1845.[7]  However, a "non-participating school district" (which has elected not to contribute financially or otherwise to the creation and operation of the <u>area</u> vocational-technical school or technical institute) will be charged for any pupil residing in its district who attends the <u>area</u> vocational-technical school or technical institute.  This is the crux of the reimbursement provisions of section 1847.

Section 1847, upon which the Secretary relied in this case, simply requires a <u>non-participating</u> school district to pay tuition for its students who attend the area vocational-technical school or technical institute funded and made possible by the <u>participating</u> school districts.  Section 1847 provides that any student residing in a <u>non-participating</u> district may attend an <u>area</u> vocational-technical school or technical institute and that the school district in which the student resides shall be charged. Again, section 1847 states, as follows:

> On obtaining the consent of the area vocational-technical board operating an area vocational-technical school or technical institute, and with or without the consent of the board of school directors of the district in which the pupil resides, <u>any pupil residing in a nonparticipating district may</u>

---

[7] Added by the Act of August 21, 1953, P.L. 1223, §2.

> attend the area vocational-technical school or technical institute. The school district in which the pupil resides shall be charged, for each pupil attending the area vocational-technical school or technical institute, an amount equal to the total approved budget for current expenses, debt service and capital outlay divided by the number of pupils enrolled in the school.

24 P.S. §18-1847 (emphasis added).

Based upon our reading of the above provision, it is clear that there must be an area vocational-technical school or technical institute in order for the reimbursement provisions of section 1847 to apply. Here, however, Central Columbia High School (where DL attended his Agricultural Mechanization program) is not an "area vocational-technical school or technical institute." It is a public academic high school. Thus, this case has nothing whatsoever to do with an "area vocational-technical school or technical institute" or a "non-participating" school district's obligation to pay tuition for one of its students. Accordingly, section 1847 does not apply here because Central Columbia High School is not an "area vocational-technical school or technical institute" which was established with other participating school districts. The Secretary erred to the extent that he relied on section 1847 to support his order of reimbursement.

However, there is a different section of Title XVIII of the School Code which nevertheless supports the Secretary's order directing reimbursement. The section appears in subarticle (a) of Title XVIII - which applies to vocational schools and programs established and operated by a school district (as opposed to school districts which participate in establishing an area vocational school). Section 1806 provides in pertinent part:

> Any school district may, through its board of school directors—

> (1) Establish and maintain . . . career and technical agricultural . . . schools or departments.

24 P.S. §18-1806.[8]

Section 1809 of the School Code, 24 P.S. §18-1809, entitled, "Attendance in other districts and other states; pupils from other states," provides, in relevant part:

> (a) Any resident of any school district which does not maintain an approved career and technical industrial, career and technical agricultural, career and technical family and consumer sciences or career and technical marketing and distributive occupational education day, part-time, or evening class, school or department, offering the type of training which he desires, may make application to the board of school directors of any other district for admission to such school or department maintained by said board. . . .
>
> ***
>
> (c) The school district in which the person resides, who has been admitted, as above provided, to an approved career and technical industrial, career and technical agricultural, career and technical family and consumer sciences, career and technical high or career and technical marketing and distributive occupational education school or department maintained by another school district, shall pay the high school charge provided for by this act. If any school district neglects or refuses to pay for such tuition, it shall be liable therefor, in an action of contract, to the school district or

---

[8] School districts may also enter into joint venture agreements to form "joint career and technical schools or departments." *See* Section 1807 of the School Code, 24 P.S. §18-1807. The School Code differentiates between "joint" Vo-tech schools and "area" tech schools which are governed by different standards, etc. The extent and nature of the differences, however, are beyond the scope of this case because this case does not involve a "joint" or an "area" Vo-tech school.

school districts maintaining the school which the pupil, with
the approval of the board, attended.

24 P.S. §18-1809(a), (c).[9]

According to this section, a resident school district is responsible for the tuition of a student who attends an approved career and technical class at a school or department maintained "<u>by another school district</u>" – if certain requirements are met. Here, it is undisputed that the Agricultural Mechanization program attended by DL was offered and maintained by another school district, i.e., Central Columbia School District. Thus, the reimbursement provisions of section 1809 apply here.

Having determined that section 1809 applies to this case, we next turn to whether Central Columbia is entitled to reimbursement for the classes attended by DL at Central Columbia High School.

Before a receiving school district can claim reimbursement from a resident school district, the receiving school district must first determine if the student is <u>eligible</u> to attend a Vo-tech program outside his home school district.

In *Correll v. Millville Area School District*, 662 A.2d 696 (Pa. Cmwlth. 1995), we explained how section 1809 works. Specifically, in order for the admitting school district to obtain reimbursement from the resident district, the admitting school must determine that the student is eligible under section 1809 and its school board must vote to admit the student based on his section 1809 eligibility:

Section 1809 allows a student to go to another district where
there exists no approved vocational program in the resident
district, <u>or where a student desires to enroll in a particular</u>

---

[9] This section was in effect at the time this case was decided. It was amended effective December 30, 2019. Those changes, however, merely replaced the word "vocational" with "career and technical."

> vocational program not offered within the resident district.[10]
> Under this provision, the student makes application to the
> admitting school district and it is the admitting school that
> determines whether §1809 admission should be granted.
> Once the admitting school grants §1809 admission, §1809(c)
> requires that the resident district pay the student's tuition at
> the admitting school.

*Correll*, 662 A.2d at 700.

In *Correll*, a student wanted to take a program in Vocational Agriculture Production which was not offered at Millville Area High School, his resident school district. Danville Area School District, an adjacent school district, offered the Vocational Agricultural Production program at its high school. The student's parents asked their resident district, Millville, to pay for the student's tuition. Millville refused.

The student's parents then applied to Danville to admit the student in the Vocational Agricultural program and the College Prep program, but they did not inform Danville that the vocational program was not offered at Millville and that this was the reason why the student applied to Danville. Danville's school board voted to admit the student as a "tuition student." The student's parents made his tuition payments directly to Danville.

Danville's school board was not aware that Millville Area School District did not offer a Vocational Agricultural Production program or that the student was applying to its Vocational Agricultural Production program pursuant to section 1809. Danville's school board was under the impression that the student's parents were simply paying tuition for the student to attend Danville – which was also a college

---

[10] To reiterate, in the present case, DL desired to enroll in the Agricultural Mechanization program which was not offered in his resident district.

preparatory school. Danville at no time attempted to pursue reimbursement from Millville under section 1809(c).

This Court held that the School Code did not require Millville Area School District to reimburse Danville for the student's tuition in that situation. We explained that in order to secure a right to receive tuition payment from the resident school district under section 1809, Danville was obligated to first verify the student's eligibility under section 1809 and admit him pursuant to section 1809. However, the evidence showed that Danville never made a section 1809 eligibility determination. It never verified, prior to enrolling the student into its Vocation Agricultural Program, that he was a pupil in a school district which did not offer such program. Additionally, the student was not admitted pursuant to section 1809.

Thus, as explained in *Correll*, the district offering a Vo-tech program will be reimbursed for tuition so long as it confirms the eligibility of the student under section 1809 and enrolls the student pursuant to section 1809.

Here, unlike in *Correll*, it is undisputed that, prior to enrolling DL into its Agricultural Mechanization Program, the School Board for Central Columbia verified that DL was, at the time of admission to Central Columbia, a resident of Hazleton Area School District, a pupil at Hazleton Area High School, and the Agricultural Mechanization program was not available in the Hazleton Area School District. Accordingly, because Central Columbia complied with the requisites of section 1809 and confirmed DL's eligibility before it enrolled DL into its Agricultural Mechanization Program, it is entitled to tuition reimbursement from Hazleton.

Regarding Hazleton's argument that it should not be responsible for DL's full tuition, we must affirm the Secretary on this issue.

Hazleton argues that Central Columbia purposely set up the class schedule for DL, and that such schedule was created to deter Hazleton from providing transportation. There is no evidence to support this theory. The only evidence offered

14

was by Central Columbia School District Superintendent, Harry Mathias, who testified that the Vo-tech class schedule is based on the program the pupil is enrolled in as well as the staff availability throughout the day. (N.T. at 63-65.) The Secretary credited this testimony. It is not for this Court to interfere with credibility determinations. Further, because Hazleton did not respond to Central Columbia's multiple inquiries regarding DL's transportation, Hazleton is now hard-pressed to complain about Central Columbia's decision to enroll DL full time.

Because DL was lawfully enrolled at Central Columbia as a full-time student, we affirm the Secretary's decision that Hazleton is liable for DL's tuition for non-vocational classes pursuant to section 2562 entitled "Payments by districts for pupils attending in other districts" which provides, in part:

> For each elementary or high school pupil attending a public school of another district, the receiving district shall bill the sending district, and the sending district shall pay the amount of the tuition charge per elementary pupil, or the tuition charge per high school pupil, as the case may be.

24 P.S. §25-2562.

## Conclusion

We affirm the order of the Secretary which ordered Hazleton Area School District to reimburse Central Columbia School District for DL's full tuition of the school years at issue, but based on sections 1809 and 2562 of the School Code, not section 1847.

_____
PATRICIA A. McCULLOUGH, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hazleton Area School District, :
               Petitioner :
                            :
                            :   No.  757 C.D. 2019
             v. :
                            :
Central Columbia School District, :
               Respondent :

## ***ORDER***

AND NOW, this 19th day of June, 2020, the order of the Secretary of Education which directed Hazleton Area School District to pay full tuition to Central Columbia School District for student DL's attendance at Central Columbia High School is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge